**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 4, 2006**

Charles R. Fulbruge III
Clerk

`IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-60216

_____

W.G. YATES & SONS CONSTRUCTION COMPANY INC., Hvy Div.,

                                                    Petitioner,

versus

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION; ELAINE CHAO,
SECRETARY, DEPARTMENT OF LABOR,

                                                    Respondents.

_____

Petition for Review of an Order of the
Occupational Health and Safety Administration
_____

Before REAVLEY, JOLLY, and DeMOSS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

     W.G. Yates & Sons Construction Company seeks review of an order upholding a citation under the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651, et seq., when a supervising employee, Martin Olvera, worked along a dangerous ledge without fall protection, in violation of 29 C.F.R. § 1926.501(b)(1).  The Administrative Law Judge upheld the citation and assessed a penalty of $5,000.  Finding that the decision rests on an error of law, we grant the petition for review, reverse the Commission's order upholding the citation, and remand to the Commission for further proceedings.

I

In the fall of 2003, W.G. Yates & Sons was the subcontractor responsible for the site work, including the dirt work and paving, required to construct a shopping center and business complex known as Patton Creek Mall in Hoover, Alabama. Two OSHA compliance officers, James Cooley and Ron Hynes, conducted an inspection of the Yates construction site on September 11, 2003. The officers observed a Yates crew laying grass mats along the slope encircling the parking lot. At the base of the slope, the landscape dropped off precipitously 65 feet.

To protect against falls, the Yates crew positioned a large front end loader and bulldozer on the top of the slope approximately 100 feet apart and strung a half inch steel cable between them. The crew then could wear safety harnesses and lanyards connected to the cable, allowing them to slide along the cable as they worked on the slope. However, officers Cooley and Hynes observed the crew's foreman, Martin Olvera, working on the slope without any form of fall protection, and Olvera's two crewmen wearing their harnesses backwards.[1] As a result, OSHA cited Yates for two serious violations -- 1) Olvera's failure to wear any fall protection while working on the slope in violation of 29 C.F.R. §

---

[1] Olvera's crew varied in size from two to seven workers depending on the job they were performing. On the day of the inspection the crew consisted only of Olvera and the two workmen.

2

1926.501(b)(1);[2] and 2) allowing the two crewmen to wear their harnesses backwards in violation of 29 C.F.R. § 1926.502(a)(2).[3]

The Administrative Law Judge ("ALJ") examining the citation held that the Secretary had established both violations and imposed a $9,000 fine, $5,000 for the failure of Olvera to wear any fall protection, and $4,000 for the incorrect use of the fall protection by the two crew members. Yates's petition for review to the Occupational Safety and Health Review Commission was denied. Yates filed this timely petition for review, contesting only the citation relating to Olvera's failure to wear fall protection. Because the Review Commission declined discretionary review of Yates's citation, we treat the decision of the ALJ as a final order of the Commission. See 29 U.S.C. § 661(j) ("The report of the administrative law judge shall become the final order of the Commission within thirty days after such report by the

---

[2] 29 C.F.R. § 1926.501(b)(1) reads as follows:

> Unprotected sides and edges. Each employee on a walking/working surface (horizontal and vertical surface) with an unprotected side or edge which is 6 feet (1.8 m) or more above a lower level shall be protected from falling by the use of guardrail systems, safety net systems, or personal fall arrest systems.

[3] 29 C.F.R. § 1926.502(b)(2) reads as follows:

> Employers shall provide and install all fall protection systems required by this subpart for an employee, and shall comply with all other pertinent requirements of this subpart before that employee begins the work that necessitates the fall protection.

3

administrative law judge, unless within such period any Commission member has directed that such report shall be reviewed by the Commission.").

## II

There is no dispute in this case that working on a slope without fall protection was violative of 29 C.F.R. § 1926.501(b)(1). Neither is there a dispute that a fall from the 65-foot high edge would result in death or serious physical harm. On the other hand, however, it is clear that the failure to comply with a specific regulation, even coupled with substantial danger is, standing alone, insufficient to establish a violation of the Act. See, e.g., Horne Plumbing & Heating Co. v. OSHRC, 528 F.2d 564, 568-69 (5th Cir. 1976) (citing Nat'l Realty & Construction Co. v. OSHRC, 489 F.2d 1257 (D.C. Cir. 1973)); Penn. Power & Light Co. v. OSHRC, 737 F.2d 350, 354-55 (3d Cir. 1984) (citing Brennan v. Occupational Safety and Health Review Comm'n (Hanovia Lamp), 502 F.2d 946, 951-52 (3d Cir. 1974)). In deciding where this case fits we can begin by observing that when drafting the Occupational Safety and Health Act "Congress quite clearly did not intend . . . to impose strict liability: The duty was to be an achievable one. . . . Congress intended to require elimination only of preventable hazards." Horne Plumbing, 528 F.2d at 568 (quoting Nat'l Realty, 489 F.2d at 1265-66). "The Act itself provides the basis for [this] reasoning [as] the statement of congressional purpose contained in the Act evidences an intent to ensure worker safety

4

only 'so far as possible'." Penn. Power & Light Co., 737 F.2d at 354 (quoting 19 U.S.C. § 651(b)).  "Nothing in the Act . . . makes an employer an insurer or guarantor of employee compliance [with the Act] at all times."  Horne Plumbing, 528 F.2d at 570 (quoting Brennan v. OSHRC, 511 F.2d 1139, 1144 (9th Cir. 1975)); see also Ocean Elect. Corp. v. Secretary of Labor, 594 F.2d 396, 399 (4th Cir. 1979) (holding that Congress never intended "the employer to be an insurer of employee safety").  Instead, the Act seeks to require employers to protect against preventable and foreseeable dangers to employees in the workplace.  See, e.g., Horne Plumbing, 528 F.2d at 571; Penn. Power & Light Co., 737 F.2d at 354 ("the purposes of the Act are best served by limiting citations for serious violations to conduct that could have been foreseen and prevented by employers with the exercise of reasonable diligence and care").

In keeping with this purpose of eschewing a strict liability standard, § 666(k) -- which outlines the proof required to establish a serious violation of the Act -- imposes liability on the employer only if the employer knew, or "with the exercise of reasonable diligence, [should have known] of the presence of the violation." 29 U.S.C. § 666(k).  That is, employer knowledge is a required element of a § 666(k) violation.  The ALJ found that because Olvera was the foreman, i.e., a supervisory employee,[4] and

_____

[4] The parties do not dispute the ALJ's finding that Olvera was a supervisory employee.

5

because Olvera knew that his conduct violated both the Act and Yates's safety policy, "[Olvera's] knowledge of this condition . . . is imputed to [Yates]" thus satisfying the knowledge requirement.[5]  Rejecting Yates's argument that Olvera's actions constituted employee conduct, the ALJ upheld the citation.  On appeal Yates argues that the ALJ erred in imputing to Yates Olvera's knowledge that, acting contrary to Yates's policy, his conduct violated the law.

It is certainly true, as the government's argument assumes, that a corporation is usually liable for acts of its supervisors in the performance of their assigned duties.  "A corporation can only act through its agents."  Ocean Elect. Corp., 594 F.2d at 399.  Thus, "[w]hen a corporate employer entrusts to a supervisory employee its duty to assure employee compliance with safety standards, it is reasonable to charge the employer with the supervisor's knowledge[,] actual or constructive[,] of non-complying conduct of a subordinate."  Mountain States Telephone and Telegraph Co. v. OSHRC, 623 F.2d 155, 158 (10th Cir. 1980).  However, "when the noncomplying behavior is the supervisor's own[,] a different situation is presented."  Id.

In this case it is not disputed that Olvera was a supervisory employee, that his own conduct is the OSHA violation, and that he

---

[5] Olvera testified that he knew he was supposed to be "tied off" when working on the slope, and that his failure to do so violated both OSHA's and Yates's safety requirements.

knew his conduct was violative of the law and of company policy. Yet, imputing to the employer the knowledge of a supervisor of his own violative conduct without any further inquiry would "amount[] to the imposition of a strict liability standard, which the Act neither authorizes nor intends." Horne Plumbing, 528 F.2d at 568. Thus we ask when is it appropriate (or inappropriate) to impute the supervisor's knowledge of his own misconduct to the employer. The answer to this question will guide this appeal.

In answering this question, we are aware of the differing opinions among the Circuits. All agree that the Secretary bears the burden of proving each element required to establish a violation -- and in the case of a serious violation, that includes employer knowledge. The disagreement arises, however, in determining whether the government can establish an employer's knowledge of a violation of law based on a disobedient supervisor's misconduct. See, e.g., Danis-Shook Jt. Venture XXV v. Secretary of Labor, 319 F.3d 805, 811-12 (6th Cir. 2003) (holding that the supervisor's knowledge of his own misconduct can be imputed to establish employer knowledge because such supervisor misconduct "raises an inference of lax enforcement and/or communication of the employer's safety policy"); Penn. Power & Light Co., 737 F.2d at 358-59 (Third Circuit holding that the Secretary cannot meet its burden to establish knowledge "where the inference of employer knowledge is raised only by proof of a supervisor's misconduct"); Mountain States Telephone & Telegraph Co., 623 F.2d at 156 (Tenth

7

Circuit holding that supervisor's knowledge and violation of the safety standard is insufficient evidence to establish employer knowledge, finding that a contrary rule would inappropriately "shift the burden of proof to the employer" on a required element of the violation). Although our Circuit has not directly answered this question, our holding in Horne Plumbing is instructive.

Horne Plumbing involved an 11-employee sole proprietorship with a model 20-year safety record and an outstanding safety program, especially with respect to the work hazard at issue. Although the owner, Horne, was regularly at the work site inspecting and overseeing the project, he left to attend (ironically) a safety conference. While Horne was absent from the site the foreman of the job, who knew of the danger he undertook and that his conduct violated Horne's policy, was killed in the accident resulting from his violation of Horne's safety rules. In considering whether to uphold the citation against Horne, we reasoned that "[f]undamental fairness . . . require[s] that one charged with and penalized for violation be shown to have caused or at least to have knowingly acquiesced in, that violation." Id. at 570 (quoting Brennan v. OSHRC, 511 F.2d 1139 (9th Cir. 1975)). We therefore examined Horne's safety program, its implementation and communication to the employees, and its record for safe working conditions. Our examination revealed Horne's safety program and employee awareness to be thorough and understood, and its safety record exemplary. There was little question that the accident

8

victims understood from the employer all precautions they should have taken. <u>Horne Plumbing</u>, 528 F.2d at 571.  Because of the lack of evidence of any failure or fault in Horne's safety program, this Court reversed the ALJ's citation of Horne, concluding that the conduct of the wayward foreman was "unforeseeable, implausible, and therefore unpreventable".  <u>Id.</u> at 571.  Imputing to Horne the knowledge of the foreman was error, and consequently the government failed to prove that Horne had knowledge of the violation.  <u>Id.</u> Holding otherwise, we reasoned, would "in effect make the employer strictly and absolutely liable for all violations. . . .  We do not find that result to be within the intent of the Congress."[6]  <u>Id.</u>

We read <u>Horne</u> to hold that a supervisor's knowledge of his own malfeasance is <u>not</u> imputable to the employer where the employer's safety policy, training, and discipline are sufficient to make the supervisor's conduct in violation of the policy unforeseeable.  As with each element required to establish a violation, employer knowledge must be established by the Secretary, as an element of § 666(k).  <u>Trinity Indus., Inc. v. OSHRC</u>, 206 F.3d 539, 542 (5th Cir.

---

[6] Yates argues that our holding in <u>Horne Plumbing</u> prohibits us from <u>ever</u> imputing the knowledge of a supervisor of his own malfeasance to the corporation for purposes of establishing employer knowledge.  We reject such a broad construction of <u>Horne Plumbing</u>.  Although <u>Horne Plumbing</u> refused to impute the supervisor's knowledge to Horne in that case, it did so <u>only</u> <u>after</u> examining the safety policy, record, training, and discipline of Horne.  The Court concluded that because Horne had adequately trained its employees and provided ample safety policies and discipline the malfeasance of the supervisor was not foreseeable.

2000) (citing <u>Carlisle Equip. Co. v. Sec. of Labor</u>, 24 F.3d 790, 792-93 (6th Cir. 1994) ("Knowledge is a fundamental element of the Secretary of Labor's burden of proof for establishing a violation of OSHA regulations.")  On the facts of this case, Yates can be charged with knowledge <u>only</u> <u>if</u> Olvera's knowledge of his own misconduct is imputable to Yates.  The knowledge is imputed <u>only</u> if Olvera's conduct was foreseeable.  Consequently, the Secretary, not Yates, bears the burden to establish that the supervisor's violative conduct was foreseeable.  Yet, the ALJ charged Yates with knowledge of Olvera's misconduct without any inquiry as to whether the misconduct should have been foreseen by Yates.  Finding the Secretary had established a serious violation (based only on Olvera's misconduct), the ALJ then shifted the burden to Yates to establish the defense of employee misconduct.[7]  By failing to

---

[7] The affirmative defense of employee misconduct requires a showing that the employer 1) has established work rules designed to prevent the violation, 2) has adequately communicated these rules to its employees, 3) has taken steps to discover violations, and 4) has effectively enforced the rules when violations have been discovered.  <u>See</u> <u>Frank Lill & Son, Inc. v. Secretary of Labor</u>, 362 F.3d 840 (D.C. Cir. 2004); <u>P. Gioioso & Sons, Inc. v. OSHRC</u>, 115 F.3d 100, 109 (1st Cir.  1997) (citing <u>New York State Elec. & Gas Corp. v. Secretary of Labor</u>, 88 F.3d 98, 105 (2d Cir. 1996)); <u>Jensen Constr. Co.</u>, 7 O.S.H. Cas. (BNA) 1477, 1479 (1979).  Thus, it appears that the required considerations for this affirmative defense closely mirror the foreseeability analysis required to determine if a supervisor's knowledge of his own misconduct, contrary to the employer's policies, can be imputed to the employer.  We do not, by this opinion, intend to alter the usual application of this affirmative defense.  In the ordinary context, the supervisor is not himself the malfeasant who personally acts contrary to instructions (as here, for example, where employees under Olvera were improperly harnessed), and thus the supervisor's knowledge of an employee's unsafe conduct is imputable to his

10

conduct the foreseeability analysis before imputing Olvera's knowledge, the ALJ effectively relieved the government of its burden of proof to establish a violation of the Act and placed on Yates the burden of defending a violation that had not been established.[8]

## III

The failure of the ALJ correctly to assign the burdens of proof requires us to remand this case to allow the respondent to conduct a foreseeability analysis to determine whether the knowledge of Olvera can be imputed to Yates. Thus, the petition

"master", the employer. Consequently, when the Government establishes employer knowledge of unsafe conduct in these ordinary cases, the burden will properly shift to the employer to establish its affirmative defense of unforeseen employee misconduct, if appropriate.

[8] In response to the dissent we emphasize the points, which we hope the opinion makes clear: OSHA is not a strict liability statute; the mere fact that violative conduct occurred is not, of itself sufficient to establish employer liability; knowledge, actual or constructive, of the unsafe condition is an element of an employer violation; the burden is on the government to prove the elements of its case; in this case we address only the situation in which it is the supervisor <u>himself</u> who engages in unsafe conduct and who does so contrary to policies of the employer. Thus, a supervisor's knowledge of his own rogue conduct cannot be imputed to the employer; and consequently the element of employer knowledge must be established, not vicariously through the violator's knowledge, but by either the employer's actual knowledge, or by its constructive knowledge based on the fact that the employer could, under the circumstances of the case, foresee the unsafe conduct of the supervisor. This rule places only the initial burden on the government to prove its alleged violation against the employer, which it can do by showing the inadequacy of the employer's program and/or its failed enforcement. The dissent appears to accept the notion that the employer is to be assumed guilty as charged until it proves its innocence. This approach, in our view, has the burdens upside down.

11

for review is GRANTED, the citation of Yates is VACATED, and the case is remanded for proceedings not inconsistent with this opinion.

VACATED and REMANDED.

REAVLEY, Circuit Judge, dissenting:

The panel here holds that, in order to penalize an employer, the agency must prove that the employer could have prevented the safety violation of its supervisor. Without regard to the personal knowledge of a supervisor, himself responsible for enforcement of safety rules, the agency must therefore start at the top and prove that rules were not promulgated or published or enforced. So the panel remands for a determination with this burden of proof placed on the agency. Because I believe this places an unjustifiable obstacle on enforcement of the law, I dissent.

I would hold that the agency proves a prima facie case by proving the participation or knowledge of a supervisor in the violation. Call it prima facie evidence of a violation, a presumption, or the usual imputation of knowledge of an agent to the employer. It is for the employer to prove, as an affirmative defense, that it had the safety rules, explained and enforced. The employer, therefore, may not be penalized "for the unforeseeable, implausible, and therefore unpreventable acts of his employees." *Horne Plumbing & Heating Co. v. OSHRC*, 528 F.2d 564, 571 (5th Cir. 1976). The panel cites *Horne Plumbing* for the proposition that "imputing to the employer the knowledge of a supervisor of his own violative conduct without any further inquiry would 'amount to the imposition of a strict liability standard.'" That is

13

not what *Horne Plumbing* held nor what the ALJ here has held. There is no strict liability. There is further inquiry. The employer is allowed to present the unforeseen employee misconduct defense. That was done here and the ALJ found that Yates failed to establish the affirmative defense.

I would apply the same rules and reach the same result of the Sixth Circuit in *Danis-Shook Joint Venture XXV v. Secretary of Labor*, 319 F.3d 805 (6th Cir. 2003), and therefore I would affirm.

14