# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 12, 2009

Charles R. Fulbruge III
Clerk

No. 08-61028

SANDERSON FARMS, INC,

Petitioner

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION; HILDA
L SOLIS, SECRETARY, DEPARTMENT OF LABOR,

Respondents

On Petition for Review of an Order
of the Occupational Safety and Health Review Commission
07-1623

Before REAVLEY, JOLLY, and WIENER, Circuit Judges.

PER CURIAM:[*]

In this petition, we review an order of the Occupational Safety and Health Review Commission ("OSHRC") citing Sanderson Farms ("Sanderson") with a violation of an Occupational Safety and Health Act ("OSHA") regulation based on its storage of pallets of frozen chicken. Because our review is convincing that substantial evidence supports the Administrative Law Judge's ("ALJ") findings and conclusions, we deny the petition.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

On April 24, 2007, Harvey McDonald, a maintenance employee at the Sanderson Farms facility in Collins, Mississippi, was killed when a pallet of frozen chicken fell on him from an overhead rack. He had been working in the facility freezer with another maintenance employee and a forklift operator to make repairs to the pallet racks. During a break in the work, McDonald went back to the freezer alone and apparently attempted to work on a rack leg without first having the pallets removed from the rack, as was the usual practice. A pallet fell on him and trapped him, and he died as a result of a fire started by the cutting torch he had been using for the repairs.

The pallets in Sanderson's freezer storeroom consist of smaller shipping pallets, each containing 50 to 60 boxes of chicken, which are placed on larger freezer pallets; a full freezer pallet weighs approximately 2200 to 2500 pounds. The freezer pallets are lifted onto racks with forklifts. The rack system consists of parallel vertical steel rack frames that extend to the ceiling and are bolted to the floor and ceiling. At seven feet and 14 feet above the floor, horizontal steel "L channels" extend along the length of the frame, creating a 3½-inch support lip on which one edge of a pallet can rest. Forklifts place pallets so that they are suspended between two parallel L channels with their edges resting on the support lips. The operation of forklifts in the rack system often causes damage to the rack legs, which can become twisted or bent so that the rack is no longer fully supported at the floor. When a broken leg is discovered, maintenance workers repair it by welding replacement material in the broken leg's place. The standard procedure for the repair includes having a forklift remove the pallets on the rack above the broken leg before doing the welding work.

In response to McDonald's accident, an OSHA compliance officer inspected the Sanderson facility. Based on the compliance officer's observations and interviews with employees, the Secretary issued a citation, with a proposed

penalty of $6,300, alleging a serious violation of 29 C.F.R. § 1910.176(b) for failing to store material so it did not create a hazard. Sanderson contested the citation at a hearing before an ALJ, who sustained the citation. Sanderson filed a petition for discretionary review with the OSHRC. The OSHRC declined to review the ALJ's decision, thereby adopting the ALJ's findings and making the ALJ's decision a final order of the OSHRC. Sanderson now seeks judicial review of that order in this court under 29 U.S.C. § 660(a).

## II.

Under the OSHA, the Secretary of Labor is authorized to promulgate health and safety regulations, which are enforced by issuing citations. 29 U.S.C. §§ 655(b), 658. The regulation at issue here provides:

> Storage of material shall not create a hazard. Bags, containers, bundles, etc., stored in tiers shall be stacked, blocked, interlocked and limited in height so that they are stable and secure against sliding or collapse.

29 C.F.R. § 1910.176(b). The citation the Secretary issued to Sanderson states in part that "[t]he palletized frozen chicken was placed on tiered freezer pallets that were not secured against falling from the rack cubicle when fully loaded."

At the hearing before the ALJ, the Secretary was required to show that (1) the safety standard applied to the conditions at issue; (2) the terms of the standard were violated; (3) employees were exposed to the hazard; and (4) Sanderson had actual or constructive knowledge of the violation. *Sec'y of Labor v. Icarus Industrial Painting and Contracting Co.*, 19 O.S.H. Cas. (BNA) 2101, 2102 (2002). After the hearing, the ALJ concluded that, although the racks could support their intended weight, there was an insufficient "margin of error" in the rack system such that the pallets were not secure against sliding or collapse. She affirmed the citation.

## III.

On review in this court, the OSHRC's factual findings will be upheld if they are "supported by substantial evidence in the record considered as a whole." *Chao v. Occupational Safety & Health Review Comm'n*, 401 F.3d 355, 362 (5th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Sanderson challenges the ALJ's findings on several grounds. First, Sanderson argues that substantial evidence does not support the finding that the pallets were insecurely stored, and that, in this respect, the ALJ improperly failed to credit certain evidence in Sanderson's favor. Second, Sanderson challenges the ALJ's finding of knowledge or constructive knowledge of a safety threat. Third, Sanderson challenges the ALJ's finding that Sanderson employees were exposed to the hazard. Fourth, Sanderson challenges the ALJ's rejection of Sanderson's affirmative defense of unpreventable employee misconduct.

Our review of the record shows that the Secretary submitted ample evidence to support the ALJ's finding (which was adopted by the OSHRC) that Sanderson violated § 1910.176(b). There was evidence that the racks were designed to support the heavy weight they held, but the evidence also showed that some were dilapidated and their legs were often twisted or broken. In addition, the ledges that held the pallets were narrow (3 ½ inches) and often not loaded properly. Tiers of boxes of chicken in the pallets were tall, leaning, and not bound together. Thus, although the entire structure was basically stable when undisturbed, the pallets and boxes became unstable when they were struck or disturbed, as they often were. Sanderson employees testified that pallets regularly fell when forklifts hit the racks.

Sanderson challenges the ALJ's consideration of particular pieces of evidence. These points of argument, however, when considered in the context of the record as a whole, do not rebut the substantial evidence supporting the ALJ's

conclusion that the standard was violated. First, Sanderson contends that the ALJ "ignored" testimony from several employees that indicated that the racks were regularly inspected, capable of supporting the pallets, and designed with bracing to increase their integrity. However, none of this testimony necessarily conflicted with the other evidence that, as the ALJ found, the storage system's low "margin of error" meant that pallets could fall too easily when disturbed. Second, Sanderson argues that the compliance officer who inspected the facility provided only "subjective" and "speculative" testimony that could not form a basis for the ALJ's determination. We can see no reason that a compliance officer's personal observations and photographs are not substantial support for an ALJ's conclusions, notwithstanding the absence of an engineering report. Moreover, the ALJ also relied on statements of Sanderson employees that pallets had fallen in the past. Further, the exclusion of the engineer's report on the structural integrity of the rack system was, if erroneous, harmless. The report only assessed the rack system's inherent stability, not the "margin of error" problem on which the ALJ based her conclusion.

Sanderson's knowledge of the violation is also substantially supported by the record. Many of the ALJ's findings, such as the leaning tiers of chicken, were in plain view, and employees regularly entered the freezer facility, both to work there and to inspect it. Sanderson managers and supervisors testified that they were aware of fallen pallets in the past; their knowledge is imputed to their employer.

Further, the ALJ's conclusion that Sanderson employees were exposed to the hazard is amply supported. Employees regularly entered the freezer units and worked among the pallets that were found to be unsafely stored. Even if the pallets only fell when struck by forklifts, as Sanderson contends, the ALJ found the company's rule requiring employees to stay away from forklifts moving pallets to be too vague to adequately remove them from the wide "zone of

danger" of falling pallets. This conclusion was supported by employee testimony that the exact meaning of the rule was unclear.

Finally, there is substantial evidence to support the ALJ's rejection of Sanderson's affirmative defense of unpreventable employee misconduct. That defense requires the employer to show (1) that it has established work rules designed to prevent the violation; (2) that it has adequately communicated these rules to its employees; (3) that it has taken steps to discover violations; and (4) that it has effectively enforced the rules when violations have been discovered. *W.G. Yates & Sons Const. Co. v. Occupational Safety & Health Review Comm'n*, 459 F.3d 604, 609 (5th Cir. 2006). Sanderson focuses its argument on the policy McDonald violated by attempting to repair a rack without first clearing it of pallets.  This argument is unavailing, however, because the OSHA citation was for unsafe storage, not for unsafe repair procedures; the storage violation would have existed even if McDonald had not worked on the racks improperly.

IV.

For the reasons stated above, the petition for review is DENIED and the order of the OSHRC is AFFIRMED.