# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60917

United States Court of Appeals
Fifth Circuit

**FILED**

October 28, 2016

Lyle W. Cayce
Clerk

BYRD TELCOM, INCORPORATED,

  Petitioner

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION;
THOMAS E. PEREZ, SECRETARY, DEPARTMENT OF LABOR,

  Respondents

On Petition for Review of an Order of the
Occupational Safety and Health Review Commission
Case No. 13-1759

Before JOLLY, HAYNES and GRAVES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:*

Byrd Telcom, Inc. ("Byrd Telcom" or "Byrd") seeks review of an order upholding a citation under the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.* ("OSH Act"). The citation derived from a tragic accident involving two Byrd Telcom workers who were killed on a cellular tower by a falling gin pole that was not rigged properly. The Administrative Law Judge

---

\* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 15-60917

("ALJ") upheld the citation and assessed a penalty of $7,000. We affirm because substantial evidence on the record as a whole supports the ALJ's findings.

I.

Byrd Telcom provides in-house tower climbing services. Its worksite in Georgetown, Mississippi—a 300-foot Verizon Wireless cellular tower—became the scene of a fatal accident on May 28, 2013. A number of workers had mounted the tower and were engaged in hoisting a gin pole up the tower's face.[1] The carabiner connected to the rigging suddenly gave way, and the falling gin pole struck workers Johnny Martone and Michael Castelli, killing them both, actually decapitating Martone. The steel gin pole was 40 feet in length and weighed approximately 1,800 pounds.

Byrd Telcom was subcontracted by Andrew Systems, Inc., to conduct an upgrade of the cellular tower. At the time of the accident, Byrd Telcom had been using the safety manual of its predecessor, Circle B Electric & Tower. The standard industry practice for the rigging of gin poles involves the use of two chokers connected together with a shackle. One week prior to the accident, however, employees John Davidson and Martone used a carabiner[2] instead because Davidson "couldn't find" a shackle and choker for this job and "had none on the truck." Davidson had never before set up rigging at the top of a

---

[1] This process is known as "jumping the gin pole."

[2] The carabiner used was PenSafe Model #C775. Notwithstanding its compliance with ANSI, Canadian, and International standards, the carabiner is designed for fall protection, not for hoisting large objects.

tower for a gin pole.[3]   Their supervisor Claudia Trammell also had no experience rigging gin poles.[4]

The two deaths spurred a fatality investigation by John Sauls, Jr., a Compliance Safety and Health Officer with the United States Department of Labor's Occupational Safety and Health Administration ("OSHA").   Sauls issued a citation under the OSH Act, alleging two serious violations of the "general duty" clause, 29 U.S.C. § 654(a)(1), accompanied by proposed penalties totaling $14,000.   Byrd Telcom appealed, and the Secretary of Labor (the "Secretary") filed a subsequent complaint with the Commission.   The complaint amended Instances (b) and (c) of Item 2 and added Instance (d) of Item 2.   The Secretary then made unopposed motions to withdraw Instances (b) and (d), which the Commission granted before trial.   The Commission therefore addressed Instances (a) and (c) of Item 2 with a proposed penalty of $7,000—the maximum civil statutory penalty under 29 U.S.C. § 666(b).

At the hearing, the ALJ considered the Secretary's arguments that Byrd Telcom violated the "general duty" clause in both Instances:

> In Instance (a) when the workers "were exposed to struck-by hazards while raising a gin pole and were not protected by a properly secured top (hook) block used in raising a gin pole," and

> In Instance (c) when "the gin pole was not permanently marked with an identification number that references a specific load chart and gin pole weight, thereby exposing employees on and near the tower to struck-by hazards while raising the gin pole."

---

[3] Davidson had, however, participated in jobs in which shackles and chokers were used to rig gin poles.   The ALJ found that his choice of the "biggest carabiner" (which he "figured . . . would be the strongest") was "inconsistent with the industry practice and its design and safety rating."

[4] Trammell quit her job as foreman before the day of the accident. During the OSHA investigation, Davidson said that "they really didn't know who was in charge the day of the accident but that he was not in charge." Other interviewed workers explained that "everybody knew what to do and they went about their job and did it."

No. 15-60917

Byrd Telcom denied these allegations and asserted the lack of an employer/employee relationship because Byrd Telcom did not exercise sufficient control over the worksite.

At the end of the protracted hearing, the ALJ found that Byrd Telcom was an "employer" within the meaning of the OSH Act. The ALJ then affirmed Byrd Telcom's violations of the General Duty Clause in Instances (a) and (c) and assessed the $7,000 penalty. The ALJ concluded that the two violations were "serious" within the meaning of the OSH Act because they resulted in two fatalities. *See* 29 U.S.C. § 666(k) (2012).

The OSH Review Commission declined discretionary review of the citation of Byrd Telcom. Thus, within thirty days of the Commission's receiving Byrd's Petition for Discretionary Review, the decision of the ALJ became the final order of the Commission. *See* 29 U.S.C. § 661(j). Byrd Telcom filed a timely petition for review, contesting the Commission's findings concerning the safety violations. The company does not challenge the Commission's finding of an employer/employee relationship between Byrd Telcom and the workers Castelli and Martone.

## II.

This Court reviews the ALJ's findings of fact to ensure that they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 660(a). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chao v. OSHRC*, 401 F.3d 355, 362 (5th Cir. 2005) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619–20 (1966)). The ALJ's legal conclusions are reviewed to determine whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Trinity Marine Nashville, Inc. v. OSHRC*, 275 F.3d 423, 427 (5th Cir. 2001).

No. 15-60917

Byrd Telcom is charged with committing two "serious violations" of the General Duty Clause of the OSH Act, 29 U.S.C. § 654(a)(1). The Clause is a catch-all provision, to be considered when no other specific standard applies. *Reich v. Arcadian Corp.*, 110 F.3d 1192, 1196 (5th Cir. 1997). Section 654(a) states:

> (a) Each employer—
>    (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;
>    (2) shall comply with occupational safety and health standards promulgated under this chapter.

29 U.S.C. § 654(a) (2012). Subsection (1) provides the language of the General Duty Clause. To establish a violation of the Clause, the Secretary must prove "(1) that the employer failed to render its workplace 'free' from a hazard which was (2) 'recognized' and (3) 'causing or likely to cause death or serious physical harm.'" *Arcadian*, 110 F.3d at 1197 (quoting *Nat'l Realty & Constr. Co. v. OSHRC*, 489 F.2d 1257, 1265 (D.C. Cir. 1973)). Section 654(a)(1) is not designed to impose liability on the employer for the missteps of an employee on a respondeat superior basis. *Getty Oil Co. v. OSHRC*, 530 F.2d 1143, 1145 (5th Cir. 1976). Under the General Duty Clause, employers must, rather, "discover and exclude from the workplace '[a]ll [feasibly] *preventable* forms and instances of hazardous conduct.'" *Id.* (quoting *Nat'l Realty*, 489 F.2d at 1267 & nn. 34-37) (alteration in original) (emphasis added).

Serious violations of the General Duty Clause affix additional elements that the Secretary must establish as part of his prima facie case. The OSH Act defines a "serious violation" as follows:

> For purposes of this section, a serious violation shall be deemed to exist in a place of employment if there is a *substantial probability* that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods,

5

operations, or processes which have been adopted or are in use, in such place of employment *unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.*

29 U.S.C. § 666(k) (emphasis added). The "substantial probability" requirement is key in an analysis of whether a violation is serious. *Chao v. OSHRC*, 401 F.3d at 367. Further, "employer knowledge is a required element of a § 666(k) violation." *W.G. Yates & Sons Const. Co. v. OSHRC*, 459 F.3d 604, 607 (5th Cir. 2006); *see also Horne Plumbing & Heating Co. v. OSHRC*, 528 F.2d 564, 568 (5th Cir. 1976).

## III.

The first issue involves Instance (a), when the workers "were exposed to struck-by hazards while raising a gin pole and were not protected by a properly secured top (hook) block used in raising a gin pole." In this case there is no dispute that rigging a gin pole while using a carabiner is a hazardous activity. Further, there is no dispute that when such an activity is conducted on a 300-foot tower, it carries with it a "substantial probability that death or serious physical harm" may result. *See* 29 U.S.C. § 666(k). The dispute arises in the employer-knowledge element of a serious violation. The language of § 666(k) itself addresses this key element, providing that dangerous practices will constitute a serious violation "unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." 29 U.S.C. § 666(k). Because the statute holds employers accountable for violations that they could have uncovered through reasonable diligence, it incorporates both actual and constructive knowledge.

Byrd Telcom contends that the Commission erred in finding that Byrd had knowledge of the Instance (a) violation. To support its argument, Byrd alleges that the actual knowledge of John Davidson—whom Byrd identifies as the foreman at the time of the accident and who instigated the misconduct

himself by rigging the gin pole with the carabiner—cannot be imputed to Byrd as the employer. Byrd Telcom points to authority in *Horne* and *W.G. Yates*. In *Horne*, this court declined to find employer liability on an imputation theory when the acts of the employees are "unforeseeable, implausible, and therefore unpreventable." *Horne*, 528 F.2d at 571. Our court in *W.G. Yates* interpreted *Horne* as indicating that "a supervisor's knowledge of his own malfeasance is *not* imputable to the employer where the employer's safety policy, training, and discipline are sufficient to make the supervisor's conduct in violation of the policy unforeseeable." *W.G. Yates*, 459 F.3d at 608–09.

We find Byrd's contention unconvincing and hold that substantial evidence supports the ALJ's findings. The ALJ found that the Secretary had established Byrd Telcom's constructive knowledge of the serious violation as a result of Byrd's inadequate safety program.[5] In particular, the ALJ found that Byrd had no work rules designed to address the proper rigging of a gin pole, did not train employees to prepare them to rig a gin pole, and did not discipline John Davidson for his hazardous choice in using a carabiner to rig the gin pole. Byrd did not adequately respond to this evidence by proving that the employee conduct was unpreventable. *See W.G. Yates*, 459 F.3d at 609 n.7 (noting that the affirmative defense of unpreventable employee misconduct requires an employer to show that it "(1) has established work rules designed to prevent the violation, (2) has adequately communicated these rules to its employees,

---

[5] Byrd Telcom has argued that the ALJ improperly shifted the burden of proving the adequacy of the safety program to Byrd because the ALJ included his discussion of constructive knowledge within a section of his findings addressing affirmative defenses. The language of the opinion clearly indicates otherwise. Within his discussion, the ALJ uses such language as "the Secretary established" and notes that "the Secretary argues, and the Court agrees, there is sufficient evidence of constructive knowledge in this case based on Byrd Telcom's inadequate safety program." Further, the Secretary addressed the issue of constructive knowledge during his case-in-chief. Thus, we do not find that the burden of proof was improperly shifted.

No. 15-60917

(3) has taken steps to discover violations, and (4) has effectively enforced the rules when violations have been discovered"). Because substantial evidence supports the finding that Byrd had constructive knowledge of the violation, we do not reach the question of whether John Davidson was in a supervisory position on the day of the accident. Irrespective of who was serving as foreman, the inadequacy of Byrd Telcom's safety program rendered a serious violation of the General Duty Clause foreseeable. Thus, we affirm the Commission's decision with respect to Instance (a).

## IV.

The second issue concerns Instance (c), when "the gin pole was not permanently marked with an identification number that references a specific load chart and gin pole weight, thereby exposing employees on and near the tower to struck-by hazards while raising the gin pole."[6] The primary consideration with respect to this issue stems from the "recognized hazard" element of the General Duty Clause. 29 U.S.C. § 654(a)(1). That is, a hazard may be recognized when it does not satisfy industry standards for the activity.

Here, the parties differ in their interpretations of whether the industry standard requires each section of the gin pole to be marked, or whether a single marking will suffice. Byrd Telcom contends that industry custom does not require every section to be marked as long as the gin pole is marked in such a way that all employees are aware of the load chart requirements. The Secretary argues, and the ALJ found, that each section should be marked in accordance with ANSI/TIA-1019-A-2012, section 6.2.6:

   a) Each gin pole assembly and associated rooster head shall be permanently marked or otherwise clearly referenced for identification to its load chart.

---

[6] The load chart indicates the amount of weight that a gin pole can withstand; thus, when a gin pole cannot be associated with its proper load chart, employees operating the lift are exposed to potentially serious hazards should the pole give way.

    b) The gin pole installation documents shall identify sections requiring a specific installation sequence and the sections shall be appropriately marked.

    c) If a track is used to lift, or jump a gin pole, it shall be identified and acceptable rigging arrangements shall be included in the installation documents.

The ALJ also found that the gin pole sections at the worksite on the day of the accident were not marked. The gin pole consisted of four sections: two white, one red, and one blue. The exhibits offered by Byrd into evidence indicated that a white gin pole section was stamped with an identification number. The white section, however, was not at the site. Furthermore, the red and blue sections were not stamped. Because the gin pole sections were not marked, the ALJ found that the employees were exposed to a high risk of death or serious physical harm resulting from a potential overloading of the gin poles. The ALJ also found that the hazard could have been prevented by properly marking the red and blue sections and verifying the load requirements before beginning the lift job according to industry standards.

We hold that substantial evidence exists to support the finding that the gin pole sections on site when the accident occurred were not marked, and thus that Byrd Telcom committed a serious violation of the General Duty Clause in Instance (c). Not only did the ALJ find that the on-site gin pole sections were not marked, but he also found that the corresponding load chart was not present on the site. Thus, the employees were unable to accurately identify the load chart requirement and verify the load prior to the lift. Because we find that the gin pole sections were not properly marked, we need not inquire into whether the industry standard demands that all sections of a gin pole be marked, or whether a single marking will suffice. Rather, we find that the unmarked gin pole sections and absence of a correct load chart generated a substantial probability that death or physical harm would result and thus constituted a serious violation. We therefore affirm the Commission's order.

No. 15-60917

V.

In addition to challenging the two serious violations, Byrd Telcom attacks the witness credibility findings of the ALJ.[7] We find no support for this argument. The ALJ provided ample explanation when he addressed the credibility of each witness's testimony, and there is no indication in the record that such conclusions were ill-founded. Thus, we decline to give weight to this argument.

VI.

In sum, we hold that substantial evidence on the record as a whole supports the ALJ's findings with respect to Instance (a) and Instance (c) of Item 2 of the citation. Thus, the petition for review is DENIED and the Commission's order is AFFIRMED.

---

[7] In particular, Byrd Telcom asserted in its brief and during oral argument that the ALJ's finding that John Davidson was a credible witness was incorrect. We acknowledge that, absent evidence in the record to the contrary, an attempt to discredit the credibility findings of the ALJ—though not futile—is nonetheless a steep hill to climb.