# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 4, 2020

Lyle W. Cayce
Clerk

No. 19-60745

TNT Crane & Rigging, Incorporated,

*Petitioner,*

*versus*

Occupational Safety and Health Review Commission;
Eugene Scalia, Secretary, U.S. Department of Labor,

*Respondents.*

On Petition for Review of an Order of the
Occupational Safety and Health Review Commission
OSHRC NO. 17-1872

Before Stewart, Clement, and Costa, *Circuit Judges.*

Per Curiam:*

The Occupational Safety and Health Administration (OSHA) issued
TNT Crane & Rigging, Inc. a citation for violating a regulation promulgated
under the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–78.

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should
not be published and is not precedent except under the limited circumstances set forth in
5th Cir. R. 47.5.4.

No. 19-60745

TNT contested the citation. After a trial, an administrative law judge affirmed the citation and the recommended penalty. The Occupational Safety and Health Review Commission declined review, which made the administrative law judge's decision final. TNT filed a petition for review in this court. We deny the petition.

I.

The parties agree on all the relevant facts. Walmart hired Better Built Enterprises as the general contractor to install new air conditioners on the roof of its Corpus Christi, Texas store. TNT Crane & Rigging, Inc. was a subcontractor that provided crane services for this job. On the second night of the job, TNT's 265-ton crane was loaded with 119,000 pounds of counterweights, had a "jib" attached—which extended the crane's reach— and had its four outriggers halfway extended onto Walmart's asphalt parking lot and concrete sidewalk. The crane manufacturer's specifications prohibit using the crane in this configuration without supporting materials under the outriggers. TNT's Standard Operating Procedure for Cranes similarly requires that these outriggers have supporting materials under them when the crane is making lifts: "Steel plates, pads or timber mats shall be used under the outriggers of all cranes no exceptions." But TNT policy also states that a crane can be used to set its own mats if "the crane is on stable ground." These mats help to stabilize the crane by distributing the weight of the outrigger feet over a larger surface area. TNT's crane operator attempted to use the crane to lift and set these steel mats under its own outriggers. That attempt ended poorly.

When the crane operator swung the crane around to pick up a steel mat, one of the outriggers punctured the concrete and the crane tipped over. The crane operator exited the crane and was seriously injured when the ball of the crane hit him.

No. 19-60745

OSHA investigated the accident and issued TNT a citation for a serious violation of the OSHA Ground Conditions Standard, 29 C.F.R. § 1926.1402(b). The citation stated: "On or about March 23, 2017, at this location, the employer did not ensure that equipment was assembled and/or operated on ground that could support the mobile crane structure." This was an alleged violation of paragraph (b) of the Ground Conditions Standard, which requires that

> [t]he equipment must not be assembled or used unless ground conditions are firm, drained, and graded to a sufficient extent so that, in conjunction (if necessary) with the use of supporting materials, the equipment manufacturer's specifications for adequate support and degree of level of the equipment are met. The requirement for the ground to be drained does not apply to marshes/wetlands.

*Id.* § 1926.1402(b). OSHA proposed a $12,675 penalty for the citation. TNT contested the citation and sought review by the Occupational Safety and Health Review Commission. *See* 29 U.S.C. § 659(a).

After a two-day trial before an administrative law judge, the judge found that TNT failed to provide adequate support for the crane according to the manufacturer's specifications and, therefore, affirmed the citation and penalty. *See id.* § 661(j). TNT petitioned the Commission for discretionary review, but the Commission declined review and issued a Notice of Final Order that made the administrative law judge's decision final. *See id.* TNT now seeks review of that final order in this court. *See id.* § 660(a).

## II.

The administrative law judge's decision was the Commission's final decision, so that is the decision we review on appeal. *Austin Indus. Specialty Servs., L.P. v. Occupational Safety & Health Review Comm'n*, 765 F.3d 434, 438–39 (5th Cir. 2014) (per curiam). We accept the administrative law

judge's factual findings as "conclusive" if they are supported by substantial evidence. 29 U.S.C. § 660(a). Evidence is "substantial" if "a reasonable mind might accept [it] as adequate to support a conclusion." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). And we accept that judge's legal conclusions unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## III.

### A.

The Secretary of Labor has delegated his authority and responsibility for administering the Occupational Safety and Health Act of 1970 to the Assistant Secretary for Occupational Safety and Health. 77 Fed. Reg. 3912 (Jan. 25, 2012). OSHA is therefore responsible for conducting investigations and issuing citations for violations of safety standards promulgated under the Act. *See* 29 U.S.C. §§ 657, 658. To issue a citation, OSHA "must show by a preponderance of the evidence: (1) that the cited standard applies; (2) noncompliance with the cited standard; (3) access or exposure to the violative conditions; and (4) that the employer had actual or constructive knowledge of the conditions through the exercise of reasonable due diligence." *Sanderson Farms, Inc. v. Perez*, 811 F.3d 730, 735 (5th Cir. 2016). TNT argues that the administrative law judge erred in finding that OSHA proved any of these elements. We disagree.

### 1.

TNT argues that the administrative law judge's finding that 29 C.F.R. § 1926.1402(b) applied was an abuse of discretion. Under paragraph (b) of that section, equipment cannot be "assembled or used unless ground conditions are firm, drained, and graded to a sufficient extent so that, in conjunction (if necessary) with the use of supporting materials, the

equipment manufacturer's specifications for adequate support and degree of level of the equipment are met." 29 C.F.R. § 1926.1402(b). Paragraph (c)(1) of that section requires that the controlling entity "[e]nsure that ground preparations necessary to meet the requirements in paragraph (b) of this section are provided." *Id.* § 1926.1402(c)(1).

TNT argues that paragraph (b)'s safety standard applies only to the controlling entity, Better Built Enterprises. TNT seems to believe that paragraph (c)(1) requires that the controlling entity provide the necessary ground preparations, but paragraph (b) imposes upon the equipment operator, TNT, no obligation to use them. That would make paragraph (b)'s conditional prohibition against assembling or using equipment at best toothless and at worst surplusage. This argument is meritless. Paragraphs (b) and (c)(1) list distinct violations. Paragraph (b) prohibits equipment from being assembled or used unless certain conditions are met. Paragraph (c)(1) requires that the controlling entity provide necessary ground preparations. And paragraph (c)(2) countenances that the controlling entity in paragraph (c)(1) might not be the equipment user in paragraph (b)—paragraph (c)(2) requires the controlling entity to "[i]nform the user of the equipment and the operator of the location of hazards beneath the equipment set-up area." *Id.* § 1926.1402(c)(2). Paragraph (b) therefore clearly imposes a duty on those who assemble and use equipment whether they are the controlling entity or not. TNT was responsible for assembling and using the crane. Thus, paragraph (b)'s standard applies to TNT.

2.

TNT argues that the administrative law judge's finding that the standard was violated wasn't supported by substantial evidence. Paragraph (b) prohibits the assembly or use of equipment unless ground conditions, including supporting materials, if necessary, can support the equipment. *Id.*

§ 1926.1402(b). Per the crane manufacturer's specifications, supporting materials were necessary. TNT failed to use those materials. As a result, the administrative law judge found that the ground conditions did not meet the manufacturer's specifications; therefore, TNT violated paragraph (b)'s standard.

TNT's argument that this finding was error is premised on its interpretation of what constitutes the "ground conditions." TNT claims that the "ground conditions" standard requires only that the ground be sufficiently firm, drained, and graded. Using the crane without supporting materials violates a different standard: 29 C.F.R. § 1926.1404(h)(2). This, TNT reasons, means that the failure to use supporting materials is not evidence of a "ground conditions" violation. As the administrative law judge notes, however, that section doesn't apply here.

Section 1926.1404(h)(2) applies to "assembly and disassembly operations." *See id.* § 1926.1404. TNT admitted that this accident didn't occur during assembly. The administrative law judge therefore correctly rejected TNT's argument that section 1926.1404(h)(2) applies. Indeed, even if it applied, TNT fails to show that this standard and paragraph (b)'s standard are mutually exclusive grounds for a citation.

Moreover, paragraph (b)'s standard isn't limited to only whether the ground is firm, drained, and graded. TNT claims that failing to use supporting materials—even when they are necessary to meet the crane manufacturer's specifications—isn't a violation of the standard. That is, TNT *could have* met the manufacturer's specifications had it used the supporting materials, so whether TNT used them is irrelevant for this standard. But as the administrative law judge correctly pointed out, the standard states that the "equipment must not be assembled or used unless . . . the equipment manufacturer's specifications for adequate support

No. 19-60745

and degree of level of the equipment *are met*." *Id.* § 1926.1402(b) (emphasis added). The administrative law judge therefore correctly concluded that TNT had to actually meet these specifications. Because the supporting materials were necessary to meet the crane manufacturer's specifications yet weren't used—neither of which are disputed—the administrative law judge's finding that this failure violated the standard was supported by substantial evidence.

3.

TNT argues that the administrative law judge's finding that a hazard existed was an abuse of discretion and wasn't supported by substantial evidence. This argument is similarly premised on TNT's interpretation of "ground conditions" as referring only to firmness, drainage, and grade. Because the administrative law judge's contrary interpretation wasn't error, this argument likewise fails. OSHA must find that a hazard exists "before issuing a standard," so OSHA "is not ordinarily required to prove the existence of a hazard each time a standard is enforced." *Sanderson Farms*, 811 F.3d at 735. The existence of a hazard is, therefore, "generally presumed in safety standards unless the regulation requires [OSHA] to prove it." *Id.* The standard here doesn't require proof of a hazard. And as already explained, the administrative law judge didn't err in finding a violation. Thus, the administrative law judge didn't abuse his discretion, nor was his decision without support from substantial evidence, by finding that a hazard was presumed here.

4.

TNT argues that the administrative law judge's finding that TNT had knowledge of the hazard was an abuse of discretion and wasn't supported by substantial evidence. The Act doesn't impose strict liability on employers for all of its employees' acts. *See W.G. Yates & Sons Constr. Co v. Occupational*

*Safety & Health Review Comm'n*, 459 F.3d 604, 606 (5th Cir. 2006). An employer is liable for an employee's serious violation of the Act only if the employer knew or through "the exercise of reasonable diligence" should have "know[n] of the presence of the violation." 29 U.S.C. § 666(k). TNT does not argue that the administrative law judge erred in finding that this was a serious violation, and no party claims that TNT had actual knowledge of the violation. Instead, TNT claims that the crane operator was not a supervisor and, even if he was, that his knowledge can't be imputed to TNT.

Whether someone is a supervisor depends primarily on the substance of his delegated authority, not his title. *Iowa S. Utils. Co.*, 5 O.S.H. Cas. (BNA) 1138 (March 15, 1977).  The administrative law judge found that the crane operator was a supervisor because he was the on-site "competent person" and was responsible for making sure TNT's crew worked safely and conformed with the Act. *Competent person* "means one who is capable of identifying existing and predictable hazards in the surroundings or working conditions which are unsanitary, hazardous, or dangerous to employees, and who has authorization to take prompt corrective measures to eliminate them." 29 C.F.R. § 1926.1401. The administrative law judge noted that the crane operator did a walkthrough with the general contractor and subcontractors to inspect where the crane would be set up, supervised the crane's assembly, and completed several forms for this job on TNT's behalf. Moreover, two employees testified that the crane operator was the supervisor here: one stated that TNT tells its employees that, unless another supervisor is present, the crane operator is who is in charge of and responsible for the job; the other stated that he worked under the crane operator, who controlled everything the night of the accident. Given the crane operator's substantive delegated duties—he was authorized to correct unsafe working conditions, supervised the crane's assembly, filled-out forms on TNT's behalf, and was recognized by other employees as being in charge of this job—the

administrative law judge did not err in finding that the crane operator was a supervisor at the time of the violation. The remaining issue, then, is whether his knowledge can be imputed to TNT.

An employer is usually liable for a supervisor's actual or constructive knowledge of conduct or of a condition that violates an OSHA standard. *W.G. Yates*, 459 F.3d at 607. But when the violation is the supervisor's own misconduct, an employer is liable only if the violation was foreseeable. *Id.* at 609. We have held that at least one way a violation can be unforeseeable is if the employer's safety policy, training, and discipline are sufficient so as to make the violation unforeseeable. *See Horne Plumbing & Heating Co. v. Occupational Safety & Health Review Comm'n*, 528 F.2d 564, 570–71 (5th Cir. 1976).

The administrative law judge found that the crane operator's actions were foreseeable for two separate reasons: (1) the rules for using a crane with supporting materials contradicted each other and were insufficiently descriptive, and (2) TNT's policy for audit and supervision were insufficient to identify and remedy violations like the one here. We agree that the first reason was sufficient for finding that the crane operator's violation was foreseeable. We therefore do not reach the second reason.

The administrative law judge correctly pointed out that TNT's Standard Operating Procedure for Cranes has two seemingly contradictory rules. The first rule states that "[s]teel plates, pads, or timber mats shall be used under the outriggers of all cranes no exceptions," yet the rule immediately after it states that "[i]n the event that the crane is on stable ground it is permissible to utilize the crane to place plates and mats only." That is, the second rule appears to be an exception to a rule that explicitly states "no exceptions." TNT's Vice President of Health, Safety, and Environmental admitted that these rules were poorly written and attempted

No. 19-60745

to clarify this contradiction without much success. He stated that these rules apply to lifting mode and set-up mode, respectively, but admitted that those are just descriptions of the work being done, not modes of the crane. He also claimed that this exception is "moot" when a crane is loaded with counterweights while acknowledging that these rules say nothing about the use of counterweights. And TNT's policies draw no such distinction between these "modes." The administrative law judge, unsatisfied with the vice president's explanation, concluded that, "[i]f the head of health and safety was not capable of clearly explaining the distinction—not to mention he admitted it was poorly written—it is certainly foreseeable an employee would have similar difficulties understanding and implementing the rule." Indeed, the crane operator clearly had such difficulties: he admitted to using the crane multiple times to set up its own supporting materials in circumstances similar to those here. Given these apparently contradictory rules—coupled with the failure of TNT's vice president to clearly explain the contradiction and the crane operator's admitted past violations—a reasonable mind might conclude that the violation here was foreseeable. Thus, the administrative law judge's finding was not an abuse of discretion or without support from substantial evidence.

B.

TNT's final argument is that the administrative law judge's finding that TNT didn't establish its unpreventable-employee-misconduct defense was an abuse of discretion. This affirmative defense isn't found in a statute or regulation; it's implied "by the scope of the Act's prohibitions." *S. Hens, Inc. v. Occupational Safety & Health Review Comm'n*, 930 F.3d 667, 678 (5th Cir. 2019). For this defense, TNT must show that it (1) has "work rules designed to prevent the violation," (2) "has adequately communicated these rules to its employees," (3) has attempted to discover violations of these rules, and (4) "has effectively enforced the rules when violations have been

discovered." *W.G. Yates*, 459 F.3d at 609 n.7. The administrative law judge rejected this argument for the same reason that it found the violation foreseeable: TNT's work rules were inadequate to prevent the violation. Because we find no error in the administrative law judge's foreseeability finding, we likewise find that he didn't abuse his discretion in rejecting this defense. *See S. Hens*, 930 F.3d at 678 (noting that, because this defense is implied, the unpreventable-employee-misconduct "inquiry often overlaps considerably with the main violation inquiry").

## IV.

For the foregoing reasons, we deny TNT's petition.