In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2035

HOWARD YOUNG MEDICAL CENTER,
INCORPORATED,

Plaintiff-Appellant,

v.

DONNA E. SHALALA, Secretary of Health
and Human Services,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 98 C 520--John C. Shabaz, Chief Judge.

Argued November 2, 1999--Decided March 21, 2000

Before COFFEY, FLAUM and KANNE, Circuit Judges.

COFFEY, Circuit Judge.  On July 22, 1998, Howard Young Medical Center, Inc. (Howard Young), a 99-bed hospital located in Woodruff, Wisconsin, appealed the Secretary of Health and Human Services' (Secretary) decision that it was not a sole community hospital./1 On December 4, 1999, the district court granted summary judgment in favor of the Secretary, concluding that the decision not to grant Howard Young sole community hospital status was supported by the evidence in the case and consistent with the administrative regulations implemented by the Secretary. We affirm.

I.  BACKGROUND

A. The Medicare System--Relevant Statutes and Regulations

   Under the Medicare system prior to 1983, hospitals and other health care providers were entitled to payment of the lesser of the "reasonable cost" or the "customary charge" for the services they provided. See 42 U.S.C. sec. 1395f(b) (1982). This all changed in 1983 when Congress established a prospective payment system (PPS) for Medicare payment of inpatient hospital services. See 42 U.S.C. sec. 1395ww(d). Under the

PPS, Medicare payments are made at predetermined rates for hospital discharges based upon the diagnosis of the patient. See 49 Fed. Reg. 235 (1984). Like all great bureaucracies, this is not the end of the story. There are exceptions to the "diagnosis" based payment scheme; the Secretary is permitted to authorize additional payments to hospitals which are designated as a sole community hospital.

A sole community hospital is defined by Medicare as:

any hospital--

(I)  that the Secretary determines is located more than 35 road miles from another hospital,

(II)  that, by reason of factors such as the time required for an individual to travel to the nearest alternative source of appropriate inpatient care (in accordance with standards promulgated by the Secretary), location, weather conditions, travel conditions, or absence of other like hospitals (as determined by the Secretary), is the sole source of inpatient hospital services reasonably available to individuals in a geographic area who are entitled to benefits under [Medicare], or

(III)  that is designated by the Secretary as an essential access community hospital under [Medicare].

42 U.S.C. sec. 1395ww(d)(5)(D)(iii) (1992). Consistent with the statute, the Secretary promulgated administrative regulations relating to a particular hospital's ability to qualify as a sole community hospital.

The regulations promulgated by the Secretary provide, in relevant part, that to be classified as a sole community hospital, Howard Young must demonstrate that it is located in a rural area, is between 25 to 35 miles from other like hospitals,/2 and that no more than 25 percent of the patients in the hospital's service area have been admitted to other like hospitals within a 35-mile radius. See 42 C.F.R. sec. 412.92(a)(1). The regulations, therefore, require two separate calculations: 1) Howard Young must establish its "service area;" and 2) the hospital must calculate its "market share" within that service area.

"Service area" is defined as "the area from which a hospital draws at least 75 percent of its inpatients during the most recent 12-month cost reporting period ending before it applies for classification as a sole community hospital." 42

C.F.R. sec. 412.92(c)(3). Furthermore, a "hospital may define its service area as the lowest number of contiguous zip codes from which the hospital draws at least 75 percent of its inpatients." Medicare Provider Reimbursement Manual (PRM) sec. 2810(A)(2)(c).

B. Howard Young's 1992 Application for Sole Community Hospital Status

In 1992, Howard Young filed an application for sole community hospital status, as required, with its fiscal intermediary, Blue Cross and Blue Shield United of Wisconsin (Blue Cross). See 42 C.F.R. sec. 412.92(b)(1)(i). In its application, Howard Young defined its service area by identifying the 16 zip codes most dependent upon the hospital. In identifying the 16 zip codes, Howard Young used those areas with the highest percentage of discharges as opposed to those areas with the highest number of discharges. Based on the information submitted, Blue Cross recommended that the Health Care Financing Administration (HCFA) approve Howard Young's application.

The HCFA disagreed and denied Howard Young's application for sole community hospital status. HCFA did so because Howard Young failed to comply with the "lowest number of zip codes" requirement when it selected zip codes with the highest percentages of discharges instead of the zip codes with the highest numbers of discharges. The HCFA used the information submitted by the hospital and recalculated Howard Young's service area in accordance with the regulations. Because the hospital had 2,253 discharges during the time period under consideration, its service area (in order to meet the required 75%) needed to contain at least 1,690 discharges. See 42 C.F.R. sec.sec. 412.92 (a)(1), (c)(3). The HCFA explained that it recalculated the service area "in the order of discharges from the highest to the lowest, until the service area has included at least 75 percent of [the hospital's] inpatient discharges . . . ." This recalculation resulted in a ten zip code service area as opposed to the 16 zip code area that the hospital proposed. The HCFA then took those ten zip codes and compared Howard Young's market share as compared to "other like hospitals" located in a 35 miles radius. By merely comparing the statistics of the hospitals, HCFA concluded that Howard Young's market share was only 41.4%, well short of the 75% required for sole community hospital status.

C. Proceedings before the Provider Reimbursement Review Board

In accordance with the regulations, Howard Young

appealed the HCFA's denial of its application to the Provider Reimbursement Review Board (PRRB). Shortly before the hearing, in September and October of 1995, Howard Young submitted additional discharge data regarding its 1991 fiscal year that it had received from the State of Wisconsin's Office of Health Care Information. According to Howard Young, this new information, which was also submitted to the HCFA, "conclusively established that [it] qualified for sole community hospital status." Basically Howard Young took the ten zip code service area designated by the HCFA and substituted the Boulder Junction, Wisconsin, zip code for the Rhinelander, Wisconsin, zip code despite the fact that Boulder Junction had fewer discharges than Rhinelander./3

The PRRB held an administrative hearing on October 12, 1995, and the only parties allowed to participate, according to the regulations, were the hospital and the intermediary, and neither the Secretary nor the HCFA. See 42 C.F.R. sec. 405.1843. At the hearing, the hospital and the intermediary stipulated that if the new information submitted by the hospital was used, then it would qualify for sole community hospital status.

On March 26, 1998, the PRRB reversed the HCFA and granted Howard Young sole community hospital status effective September 24, 1992. In so doing, the PRRB concluded that it was authorized to consider the new materials submitted by the hospital under 42 U.S.C. sec. 1395oo(d). The PRRB also concluded that the information submitted by Howard Young was relevant to the determination of whether it qualified for sole community hospital status under Medicare. Based on the fact that the hospital and the intermediary stipulated that Howard Young would qualify as a sole community hospital if the information submitted in 1995 was used, the PRRB concluded that Howard Young was "entitled" to sole community hospital status.

D.  The Secretary's Decision

The Secretary, acting through her designated agent, the Deputy Administrator of HCFA, reversed the PRRB and concluded that the HCFA had "properly denied [Howard Young's] request for designation as a sole community hospital." The Secretary determined that the regulations and PRM require that Howard Young submit all relevant information with its original application. Based on the original information submitted by the hospital, the Secretary found that the HCFA had properly analyzed the data and denied Howard Young's application because the application did not use the "lowest number of zip codes." The

Secretary also concluded that there was no legitimate reason to substitute Boulder Junction for Rhinelander because Boulder Junction had fewer discharges.

The Secretary also determined that the HCFA's denial of Howard Young's application for sole community hospital status could only reasonably be reversed based on the information originally submitted to the HCFA, and not based on the information submitted to the PRRB. In any event, the Secretary concluded that the information Howard Young submitted to the PRRB failed to "demonstrate that HCFA improperly denied [sole community hospital] status," but could only be considered, at most, "a new application for [sole community hospital] status and not a basis for reversing HCFA's original denial." Finally, the Secretary concluded that the PRRB had "incorrectly based its decision on the stipulation," because the HCFA's recalculation of Howard Young's service area "is supported by the record and consistent with the requirements of the regulations and manual instructions."

Howard Young appealed the Secretary's reversal of the PRRB to the district court, which granted summary judgment in favor of the Secretary. Howard Young now appeals to this Court.

II. ISSUE

On appeal, we consider whether the Secretary's decision to uphold the HCFA's denial of Howard Young's application for sole community hospital status was supported by substantial evidence and in accordance with the law.

III. DISCUSSION

As the district court observed, review in federal court of decisions entrusted to administrative agencies is deferential and thus very limited in scope. We will set aside agency action only if we determine that its decision is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence in the case, or not in accordance with the law. See 5 U.S.C. sec. 706(2)(A), (E); see also Central States Enter., Inc. v. ICC, 780 F.2d 664, 673, 674 n.10 (7th Cir. 1985). In applying this standard, we look to the administrative record in existence, and we thus accord no deference to the district court's disposition of the matter. See Hanson v. Espy, 8 F.3d 469, 472 (7th Cir. 1993). We focus primarily on whether the agency considered the relevant data and offered a satisfactory explanation for its action; we look only for a rational connection between the facts the agency found and the decision it made. See Motor Vehicle

Mfrs. Ass'n v. State Farm Mutual Ins. Co., 463 U.S. 29, 43 (1983). We are not permitted to reweigh the evidence or to substitute our own judgment for that of the administrative agency. See Jancik v. HUD, 44 F.3d 553, 556 (7th Cir. 1995). Furthermore, "[t]he Secretary's interpretation of regulations issued pursuant to the complex and reticulated Medicare Act is entitled to considerable deference . . . [and t]he fact that the PRRB and the Secretary may have reached different conclusions does not diminish the deference due the Secretary's final decision; [f]inal responsibility for rendering decisions rests with the agency itself, not with subordinate hearing officers." Adventist Living Centers, Inc. v. Bowen, 881 F.2d 1417, 1420-21 (7th Cir. 1989) (internal citations and quotations omitted).

A. Denial of the Hospital's Application Based on the 1992 Data

Howard Young argues that the Secretary's decision with respect to the 1992 data was neither supported by substantial evidence nor in accordance with the law governing the designation of a facility as a sole community hospital. According to Howard Young, its original 1992 application identified a sixteen zip code area that accounted for more than 75 percent of its inpatient admissions with less than 25 percent of inpatients from the same service area having been admitted to other like hospitals within a 35-mile radius. Thus, Howard Young argues, its original application satisfied the requirements set forth in the regulations and the PRM. See 42 C.F.R. sec. 412.92(a) (1)(i); PRM sec. 2810(A)(2)(c).

The HCFA, however, was able to use the statistics submitted by Howard Young with its original application for sole community hospital status to recalculate the hospital's service area. By listing zip codes in order of discharges from the highest to the lowest number until the service area included at least 75% of the hospital's inpatient discharges, the HCFA was able to devise a service area for Howard Young which contained only ten zip codes. Using this service area, the HCFA calculated that the hospital's market share was only 41.4%, obviously short of the 75% necessary to be designated a sole community hospital. See 42 C.F.R. sec. 412.92(a)(1)(i). In an effort to challenge the propriety of the HCFA's proposed service area, Howard Young asserts that contiguity is a requirement to be considered in determining a facility's service area.

Howard Young's argument is misplaced. Despite the fact that the PRM uses the term "contiguous

zip codes," zip code continuity is not a requirement, and was included in the PRM by mistake. See 61 Fed. Reg. 46203 (1996). The HCFA revised the sole community hospital regulations in 1988 and stated that the proper criterion is simply the "lowest number of zip codes." See 53 Fed. Reg. 38510-11 (1988). The HCFA explained that it applied the "lowest number" test since October 1, 1988, because the lowest number of contiguous zip codes method does not present a very "accurate picture of a hospital's true service area . . . ." 61 Fed. Reg. 46204 (1996). Additionally, in the 1988 Federal Register preamble, the HCFA also noted that it would use the "lowest number of zip codes" in determining a provider's service area.

In St. Anthony Mem'l Hosp. v. Blue Cross and Blue Shield of Ill., PRRB No. 2000-D5, the Secretary explained that statements in the PRM are generally considered interpretive, not binding, whereas statements in the preamble portion of the Federal Register constitute the agency's statutory interpretation. PRRB No. 2000-D5 at 11, citing Methodist Hosps. of Sacramento v. Shalala, 38 F.3d 1225, 1229-35 (D.C. Cir. 1994); Jewish Hosp. v. Sec. of Health and Human Servs., 19 F.3d 270, 272-76 (6th Cir. 1994). Thus, the fact that the preamble to both the 1988 and 1996 Federal Register stated that a service area would be made up of the lowest number of zip codes, without any mention that they be contiguous, indicates that contiguity is not a requirement for a sole community hospital application.

Because contiguity of zip codes is not required when defining a service area for purposes of determining whether Howard Young qualifies as a sole community hospital, we defer to the service area as defined by the HCFA in considering the hospital's application. Under the service area delineated by the HCFA, Howard Young had only 41.4% of the market share; the regulations require 75%. Thus, we refuse to overturn the Secretary's decision upholding the HCFA's denial of Howard Young's original application for sole community hospital status.

B.  Consideration of the Hospital's 1995 Data

Shortly before the PRRB hearing, Howard Young submitted a new ten zip code service area that accounted for more than 75% of its inpatients discharged within the hospital's fiscal year 1991 and established that fewer than 25% of the patients from the relevant service area were admitted to other like hospitals. As stated earlier, counsel for the hospital and counsel for the fiscal intermediary stipulated that the ten

zip codes submitted by the hospital would satisfy the requirements of the regulations and the PRM. Using this new service area, the parties then stipulated that if Howard Young were allowed to use the information it submitted to the PRRB, rather than the data that was before the HCFA in 1992, it would satisfy the market share test and thereby qualify Howard Young as a sole community hospital. As noted before, neither the HCFA nor the Secretary was a party to this stipulation.

Howard Young argues before this Court that: 1) the PRRB properly considered the 1995 data; 2) if this 1995 data is considered, it qualifies as a sole community hospital; and 3) that the HCFA and the Secretary are bound by the stipulation made by counsel for the intermediary at the PRRB hearing.

1.  The Stipulation

As a preliminary matter, we do not consider the Secretary to be bound by the stipulation entered into at the PRRB hearing by counsel for the hospital and counsel for the intermediary. Pursuant to the regulations, neither the Secretary nor the HCFA were a party to, and thus did not participate in, the hearing before the PRRB. See 42 C.F.R. sec. 405.1843 (except when the HCFA acts directly as intermediary, "neither the Secretary nor the Health Care Financing Administration may be made a party to the hearing"). Thus we will not hold the HCFA, much less the Secretary, responsible for a stipulation that they had no chance to challenge and that may conflict with the agency's official position regarding service areas. See Heckler v. Community Servs., 467 U.S. 51, 64 (1984) (government not bound by misrepresentations made by fiscal intermediary regarding published Federal regulations under Medicare program). See also Appalachian Reg'l Healthcare, Inc. v. Shalala, 131 F.3d 1050, 1053 n.4 (D.C. Cir. 1997) ("the intermediary's position is not the Secretary's . . . . [W]e think it plain that a statement by intermediary's counsel in the course of an internal quasi-adjudicatory proceeding" cannot be thought of "as the official departmental position" (citations omitted)); Monongahela Valley Hosp. v. Sullivan, 945 F.2d 576, 589 (3rd Cir. 1991) ("[provider's] contention that it reasonably relied on Blue Cross's representation . . . . 'misapprehends the nature of the relationship between the fiscal intermediary and the Secretary'" (citations omitted)).

2.  The 1995 Data

In reviewing the PRRB's decision, the Secretary found that even if the 1995 data had been before the HCFA in 1992, the outcome would have been the same because there was no reason to alter the service area proposed by the HCFA, especially in light of the fact that the Boulder Junction area had far fewer discharges than the Rhinelander area. According to the Secretary's interpretation of the regulations, it is unacceptable to replace a zip code with a higher number of discharges with a zip code with fewer discharges because a service area is to be defined by listing zip codes in order of the number of discharges, from the highest to the lowest, until the service area includes at least 75% of the hospital's inpatient discharges.

Because Howard Young's proposed service area did not comport with the regulations, the Secretary found that the hospital's proposed new service area, created in 1995 by replacing the Rhinelander zip code with the Boulder Junction zip code, was improper. Giving the proper deference to the Secretary's interpretations, we refuse to hold that this reading of the regulations and PRM was incorrect.

Accordingly, we hold that the ten zip code service area proposed by the HCFA was consistent with the regulations and the service area proposed by the hospital in 1995, by substituting the Boulder Junction zip code for the Rhinelander zip code, was inconsistent with the regulations. Thus, even if the 1995 data was considered, Howard Young's application would still fall short of qualifying it as a sole community hospital./4

The district court's grant of summary judgment to the Secretary is

AFFIRMED.

/1 Sole community hospital is a designation, under Medicare, that the hospital serves a community with limited access to medical care. The reason that Howard Young cares about such a designation is that sole community hospitals recover additional monies under Medicare.

/2 "The term 'like hospital' means a hospital furnishing short-term, acute care. [Health Care Financing Administration] will not evaluate comparability of specialty services in making determinations on classifications as sole community hospitals." 42 C.F.R. sec. 412.92(c)(2).

/3 For the hospital's 1991 fiscal year, the time period relevant to the determination of its sole

community hospital status, the Boulder Junction area had 90 discharges and was ranked 11th in number of discharges while the Rhinelander area had 130 discharges and was ranked sixth.

/4 Because we hold that the Secretary properly denied Howard Young's application for sole community hospital status even if the 1995 data was considered, we need not address the issue of whether the Secretary erred in concluding that the hospital's 1995 data was improperly considered by the PRRB.