# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 21, 2018          Decided July 2, 2019

No. 17-1189

WAYNE J. GRIFFIN ELECTRIC, INC.,
PETITIONER

v.

SECRETARY OF LABOR,
RESPONDENT

———

On Petition for Review of a Final Order
of the Occupational Safety & Health Review Commission
OSHRC Case No. 15-0858

———

*Dion Y. Kohler* argued the cause and filed the briefs for petitioner.

*Brian A. Broecker*, Attorney, U.S. Department of Labor, argued the cause for respondent. With him on the brief were *Ann S. Rosenthal*, Associate Solicitor, and *Heather R. Phillips*, Counsel.

Before: SRINIVASAN and KATSAS, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KATSAS.

2

KATSAS, *Circuit Judge*:  Petitioner Wayne J. Griffin Electric, Inc. seeks review of a citation for violating workplace safety standards designed to prevent electric shock.  The case largely turns on administrative findings about the carelessness of a Griffin supervisor.

I

The Occupational Safety and Health Act of 1970 requires employers to provide a workplace "free from recognized hazards" likely to cause death or serious injury, 29 U.S.C. § 654(a)(1), and to "comply with occupational safety and health standards" promulgated by the Secretary of Labor, *id.* § 654(a)(2).  One such safety standard requires an employer, before employees begin work, to "ascertain by inquiry or direct observation, or by instruments, whether any part of an energized electric power circuit" is "so located that the performance of the work may bring any person" into contact with the circuit.  29 C.F.R. § 1926.416(a)(3).  Another standard prohibits an employer from permitting work "in such proximity to any part of an electric power circuit that the employee could contact" the circuit, unless it is de-energized or effectively guarded.  *Id.* § 1926.416(a)(1).

Griffin was hired to upgrade electrical systems in two office buildings owned by Fidelity Investments.  To prepare for work on two substations, Griffin foreman Keith Piechocki wrote a method of procedure called MOP-51.  A written MOP includes step-by-step instructions for each segment of the work—including what electrical equipment must be de-energized and who is responsible for each task.  In this case, MOP-51 required de-energizing the substations, but not a metal bar connected to one of them.  Piechocki omitted the latter step because he assumed that the bar was not energized, even though project drawings revealed otherwise.

Piechocki presented MOP-51 at a meeting attended by Fidelity and other contractors involved in the project. He also shared a final draft of it with his own supervisors. Nobody noticed the mistake.

Griffin had two general safety policies in place at the time. The No Live Work policy prohibited employees from working close to "an electrical system with exposed energized parts." J.A. 32. The Test Before You Touch policy required employees to "'[t]est every circuit, every conductor, every time you touch!'—even if it seems 'redundant or unnecessary.'" *Id.*

Piechocki and Griffin employee Brian Jusko did the work on one substation described in MOP-51. Before they began, Piechocki and Jusko tested the substation, but not the bar connected to it. As they worked, Jusko inadvertently touched the live bar. He suffered significant injuries as a result.

Following an investigation, the Occupational Safety and Health Administration, which administers the Act for the Secretary, cited Griffin for failing to determine whether the circuit was energized and for permitting employees to work close to a live circuit. The Administration concluded that the violations were serious and recommended a civil penalty of $14,000.

Griffin sought review before the Occupational Safety and Health Review Commission. An administrative law judge affirmed the citation and assessed a penalty of $7,000. When the Commission declined further review, the ALJ's decision became its final order by operation of law. 29 U.S.C. § 661(j).

Griffin now seeks review in this Court. We have jurisdiction under 29 U.S.C. § 660(a).

4

II

We must determine whether the Commission's order was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). We accept the Commission's factual findings if they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 660(a). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." *AJP Constr., Inc. v. Sec'y of Labor*, 357 F.3d 70, 73 (D.C. Cir. 2004) (quotation marks omitted).

The ALJ affirmed citations for two serious violations of the Act. A serious violation is one that creates a "substantial probability" of death or serious physical harm "unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." 29 U.S.C. § 666(k). A serious violation thus has four elements: "(a) the applicability of the cited standard, (b) the employer's noncompliance with the standard's terms, (c) employee access to the violative conditions, and (d) the employer's actual or constructive knowledge of the violation (*i.e.*, the employer either knew, or with the exercise of reasonable diligence could have known, of the violative conditions)." *AJP Constr.*, 357 F.3d at 71 (quotation marks omitted).

Griffin argues that it complied with the two safety standards, that it lacked actual or constructive knowledge of any violations, and that it was entitled to an unpreventable-misconduct defense. We reject these contentions.

A

Substantial evidence supports the ALJ's determination that Griffin violated both safety standards.

5

The first standard required Griffin to "ascertain," before Piechocki and Jusko began their work, whether any energized part of the circuit was "so located that the performance of the work" may have brought them into contact with it. 29 C.F.R. § 1926.416(a)(3). The ALJ's finding that Griffin violated this standard is amply supported; part of the circuit was energized, Jusko touched it, and Griffin did not ascertain the hazard before work began.

Griffin argues that there was no violation because it acted reasonably. According to Griffin, it did enough by establishing general safety policies, relying on the MOP process, and entrusting its responsibilities to Piechocki, an experienced electrician. These arguments suffer from the same basic flaw. None of them addresses the dispositive question: did Griffin "ascertain" whether there was a live circuit that Jusko might touch? The answer is surely no.

In any event, even if the standard required only reasonable efforts, the ALJ permissibly found a violation. Griffin's general safety policies do not establish that it was reasonably careful regarding the incident in question. To the contrary, the ALJ reasonably found that the policies were not adequately communicated to Piechocki and others. *See* J.A. 34–35. Moreover, MOP-51 did not include a step to determine whether the bar was energized, and the ALJ reasonably concluded that this oversight reflected carelessness by Griffin's supervisors. *See* J.A. 19–20. Finally, Griffin cannot escape responsibility for that carelessness. The governing duties of care ran against Griffin as an "employer." 29 U.S.C. § 654(a); 29 C.F.R. § 1926.416(a). Griffin therefore was "subject to liability if any person to whom [it] entrust[ed] the task of compliance with the statute [was] negligent." Restatement (Second) of Agency § 520 cmt. *a* (1958) (Second Restatement).

6

Because the bar was live and unguarded, the second safety standard prohibited work "in such proximity" that an employee "could contact" it. 29 C.F.R. § 1926.416(a)(1). It is undisputed that Jusko was working close enough to touch the bar, so Griffin plainly violated this provision as well.

B

Griffin next contends that it did not have actual or constructive knowledge of these violations. The ALJ found that Piechocki had both actual and constructive knowledge. J.A. 24–25. In its opening brief, Griffin did not challenge the finding of constructive knowledge. Griffin hinted at such an argument in its reply brief, but that came too late. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008). Accepting that Piechocki had constructive knowledge, we consider only whether the ALJ permissibly imputed the knowledge to Griffin. We hold that she did.

Under the common law of agency, a supervisor's knowledge of safety violations often is imputed to the employer. *See*, *e.g.*, Second Restatement §§ 277, 496. The same rule governs cases under the Act. *See*, *e.g.*, *Dana Container, Inc. v. Sec'y of Labor*, 847 F.3d 495, 499 (7th Cir. 2017) ("When an employee is acting within the scope of her employment, her knowledge is typically imputed to the employer."); *Quinlan v. Sec'y, U.S. Dep't of Labor*, 812 F.3d 832, 837 (11th Cir. 2016) ("where the Secretary shows that a supervisor had either actual or constructive knowledge of the violation, such knowledge is generally imputed to the employer" (quotation marks omitted)). Nonetheless, four circuits have held that a supervisor's knowledge of his own violations may be imputed only if the violations were foreseeable to others in the company. *See W.G. Yates & Sons Constr. Co. v. OSHRC*, 459 F.3d 604, 607–09 (5th Cir. 2006)

(collecting cases); *Ocean Elec. Corp. v. Sec'y of Labor*, 594 F.2d 396, 401 (4th Cir. 1979). In contrast, two other circuits seem to permit such imputation without requiring foreseeability. *See Dana Container*, 847 F.3d at 499–500; *Danis-Shook Joint Venture XXV v. Sec'y of Labor*, 319 F.3d 805, 812 (6th Cir. 2003).

Griffin asks us to require foreseeability in these circumstances. Given the background common law of agency, we are skeptical of such a requirement. But Griffin barely briefed the issue, and we need not decide it. Here, the ALJ found that Piechocki's carelessness was foreseeable to other Griffin supervisors. J.A. 28–31. Substantial evidence supports that finding: Piechocki's superiors received a copy of MOP-51, which did not contain a step to de-energize the bar even though project drawings revealed that it was live. That is enough to establish foreseeability, assuming it was necessary to do so.

C

The ALJ reasonably rejected Griffin's "unpreventable employee misconduct" defense. "To establish this defense, an employer must demonstrate that it (1) established a work rule to prevent the reckless behavior and/or unsafe condition from occurring, (2) adequately communicated the rule to its employees, (3) took steps to discover incidents of noncompliance, and (4) effectively enforced the rule whenever employees transgressed it." *Frank Lill & Son, Inc. v. Sec'y of Labor*, 362 F.3d 840, 845 (D.C. Cir. 2004) (quotation marks omitted).

The ALJ permissibly concluded that Griffin failed to prove the second element of the defense. A rule is not adequately communicated when employees are confused. *See Frank Lill*, 362 F.3d at 845. Here, the ALJ found that Piechocki was confused about whether the No Live Work policy applied,

whether he was supposed to test areas of potential inadvertent contact, and what parts of the relevant circuits could be energized. J.A. 34–35. Substantial evidence, including Piechocki's testimony about the policy and his actions on the day of the incident, supports those findings. *See* J.A. 20–21 n.15.

## III

The ALJ ruled against Griffin based on findings supported by substantial evidence. We therefore deny the petition for review.

*So ordered.*