# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 1, 2021

Lyle W. Cayce
Clerk

No. 20-60849

Angel Brothers Enterprises, Limited,

*Petitioner*,

*versus*

Martin Walsh, Secretary, U.S. Department of Labor,

*Respondent*.

Petition from the Decision of the
Occupational Safety & Health Review Commission
OSHRC Docket No. 16-0940

Before Jones, Costa, and Duncan, *Circuit Judges*.

Gregg Costa, *Circuit Judge*:

The Occupational Safety and Health Administration cited Angel Brothers Enterprises because an employee was doing excavation work in a trench that lacked cave-in protection. An administrative law judge and the Occupational Safety and Health Review Commission affirmed the citation, found the violation to be willful, and assessed a $35,000 penalty.

The central issue on appeal is whether a supervisor's involvement in a subordinate employee's violation of workplace safety rules renders the employer liable. We hold that imputing the supervisor's knowledge of the

No. 20-60849

safety violation to the employer is appropriate in this situation under basic agency principles. And because Angel Brothers' other challenges cannot overcome the deference we owe agency factfinding, we deny the petition for review.

I.

An Angel Brothers construction crew was installing a concrete drainage pipe alongside a road in LaPorte, Texas. For the first two days of the project, the crew had adequate protection from cave-ins. But beginning on day three, the work would be too close to the street to continue with the safety measure the company had been using—"benching" the walls of the excavation. Angel Brothers safety manager Kevin Bennett thus told foreman Salvador Vidal that the crew would need to start using a trench box, which is placed in the ditch and has walls that guard against cave-ins.

Vidal did not follow those instructions. The very next day, crew member Salvador Fonseca entered the excavation despite the lack of a trench box. Vidal admitted that he allowed Fonseca to work without the trench box. He thought that would not pose a problem because Fonseca would only need to spend ten to fifteen minutes inside the excavation. Vidal did not want to install the trench box because doing so would have blocked the adjoining intersection and taken more time. Vidal and another employee, Jose Garcia, stood by while Fonseca worked in the trench.

An OSHA Compliance Officer happened to visit the worksite while Fonseca was working in the trench without adequate protection. The inspector issued Angel Brothers a citation for violating the requirement that "[e]ach employee in an excavation shall be protected from cave-ins by an adequate protective system." 29 C.F.R. § 1926.652(a)(1).

Angel Brothers has never disputed that Fonseca's working in a trench without cave-in protection violated OSHA rules. But it has challenged

whether it can be held responsible for the violation. An ALJ held a hearing and affirmed the citation against Angel Brothers as willful.

The Commission affirmed. It concluded that the Secretary of Labor had proven all elements of the violation, including the employer's knowledge. In the Commission's view, Vidal's knowledge as a supervisor flowed to the company. The Commission also rejected Angel Brothers' affirmative defense, determining that the company did not prove that it effectively enforced safety rules or disciplined employees for safety violations. Finally, the Commission affirmed the ALJ's finding that the conduct was willful.

Angel Brothers' third attempt to avoid the citation is now before us.

## II.

We must accept factual findings of the Commission if they are supported by "substantial evidence on the record considered as a whole" and uphold those findings "if a reasonable person could have found what the [Commission] found, even if the appellate court might have reached a different conclusion." *Sanderson Farms, Inc. v. Perez*, 811 F.3d 730, 734 (5th Cir. 2016) (quoting 29 U.S.C. § 660(a)). We review legal conclusions for "whether they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Austin Indus. Specialty Servs., L.P. v. Occupational Safety & Health Review Comm'n*, 765 F.3d 434, 438–39 (5th Cir. 2014) (citation omitted); *see* 5 U.S.C. § 706(2)(A).

## A.

To establish an OSHA violation, the Secretary "must show by a preponderance of the evidence: (1) that the cited standard applies; (2) noncompliance with the cited standard; (3) access or exposure to the violative conditions; and (4) that the employer had actual or constructive

knowledge of the conditions through the exercise of reasonable due diligence." *Sanderson Farms*, 811 F.3d at 735. Angel Brothers disputes only the final requirement.

How do we determine the knowledge of inanimate business entities? Because "a corporation can only act through its agents," it "is usually liable for acts of its supervisors in the performance of their assigned duties." *W.G. Yates & Sons Const. Co. v. Occupational Safety & Health Review Comm'n*, 459 F.3d 604, 607 (5th Cir. 2006) (first quotation from *Ocean Elec. Corp. v. Sec'y of Labor*, 594 F.2d 396, 399 (4th Cir. 1979)). That principle of vicarious liability is Agency Law 101. *See* RESTATEMENT (THIRD) OF AGENCY § 2.04 ("An employer is subject to liability for torts committed by employees while acting within the scope of their employment."). An employer can be held responsible not just for the conduct of its agents but also for their knowledge. *Id.* § 5.03 ("[N]otice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal"). We have recognized the application of these general agency principles in the OSHA context: "[W]hen a corporate employer entrusts to a supervisory employee its duty to assure employee compliance with safety standards, it is reasonable to charge the employer with the supervisor's knowledge, actual or constructive, of non-complying conduct of a subordinate." *Yates,* 459 F.3d at 607 (brackets omitted) (quoting *Mountain States Tel. & Tel. Co. v. Occupational Safety & Health Review Comm'n*, 623 F.2d 155, 158 (10th Cir. 1980)).

Based on what we have said so far, this would seem to be an open-and-shut case. Angel Brothers' foreman knew about the safety violation, ergo the company knew about the violation.

But it is not so simple. The rub is an exception *Yates* recognized from the ordinary application of vicarious liability. When a supervisor's "own

conduct is the OSHA violation," the supervisor's knowledge should be imputed to the employer only if the supervisor's misconduct was foreseeable. *Yates*, 459 F.3d at 607, 609; *accord Penn. Power & Light Co.*, 737 F.2d 350, 354–55 (3d Cir. 1984); *Mountain States*, 623 F.3d at 158 (both requiring foreseeability when the violation is a supervisor's own conduct). *But see Dana Container, Inc. v. Sec'y of Labor*, 847 F.3d 495, 499–500 (7th Cir. 2017); *Danis-Shook Jt. Venture XXV v. Sec'y of Labor*, 319 F.3d 805, 811–12 (6th Cir. 2003) (both automatically imputing knowledge to the employer when a supervisor commits the violation); *see also Wayne J. Griffin Elec., Inc. v. Sec'y of Labor*, 928 F.3d 105, 109 (D.C. Cir. 2019) (noting that the court was "skeptical" of *Yates'*s foreseeability requirement given the "background common law of agency" but not resolving the question). The rationale for the *Yates* exception is a concern that a strict liability regime, rather than one requiring knowing misconduct, would result if one supervisor were the source of both the underlying violation and the company's awareness of it. 459 F.3d at 607–09.

That situation is not present here. The violation was a crew member's working in the unsafe trench, and foreman Vidal allowed the violation to occur in contravention of his duty to ensure worker safety. *Cf. id.* at 607.

Angel Brothers nonetheless tries to characterize the violation as one involving the foreman's "own malfeasance" because he authorized the crewmember to work in the trench. But authorizing another's violation is not the same as committing the violation oneself. *Yates* makes this clear in both what the opinion says and what it did. The opinion "emphasize[s]" that the exception extends to "only the situation in which it is the supervisor *himself* who engages in unsafe conduct and who does so contrary to policies of the employer." *Id.* at 609 n.8. And while *Yates* rejected imputing a supervisor's knowledge to the employer for a citation listing the supervisor's failure to wear fall protection when working on a slope, *id.* at 610 (remanding to the

5

agency for a foreseeability inquiry), a companion citation against the employer for "allowing the two crewmen to wear the harnesses backwards" was not even challenged on appeal, *id*. at 606. On its own terms then, the *Yates* exception does not apply when, like here, a supervisor did not commit the safety violation.

Nor does it make sense to extend the *Yates* exception to cases in which a supervisor authorizes a subordinate to violate a safety rule. Consider two situations. Situation A is this case, in which a supervisor authorizes a subordinate to engage in unsafe work. In Situation B, the subordinate chooses to engage in unsafe work on his own; a supervisor later visits the construction site and sees the unsafe condition. By any measure, there is a stronger case for holding the employer liable in Situation A given the active involvement of the supervisor. *See Floyd S. Pike Elec. Contractor, Inc. v. Occupational Safety & Health Review Comm'n*, 576 F.2d 72, 77 (5th Cir. 1978) ("Because the behavior of supervisory personnel sets an example at the workplace, an employer has if anything a heightened duty to ensure the proper conduct of such personnel."). Yet Angel Brothers' position is that the supervisor's knowledge of the violation would be imputed to the employer only in Situation B in which the supervisor's knowledge of the violation only came about through happenstance. The active involvement of the supervisor in the Situation A violation would be tantamount, in Angel Brothers' view, to a violation by the supervisor and thus give rise to the *Yates* exception. This theory that would impute a supervisor's knowledge to the employer only when he has passive involvement in a subordinate's safety violation upends agency principles. RESTATEMENT (THIRD) OF AGENCY § 5.03.

Caselaw likewise rejects Angel Brothers' attempt to treat a supervisor's own safety violation and a supervisor's involvement in a subordinate's violation as one and the same. The parties debate our

unpublished applications of *Yates*. Those decisions are not binding, so they do not control our decision today. But we note that their outcomes maintain the distinction between a citation based on the supervisor's own violation of a safety standard and a citation based on a subordinate's violation. We did not automatically impute knowledge when the violation was the supervisor's failure to ensure a crane operator's qualifications. *Deep S. Crane & Rigging Co. v. Harris*, 535 F. App'x 386, 388 (5th Cir. 2013). We did impute a supervisor's knowledge to the company when the supervisor's misconduct was not the "physical condition[] constituting the violation." *Calpine Co. v. Occupational Safety & Health Review Comm'n*, 774 F. App'x 879, 883–84 (5th Cir. 2019). Here the safety violation was the presence of crew member Fonseca, not foreman Vidal, in the unsafe trench.

The Eleventh Circuit also limits its *Yates*-like exception to violations citing the supervisor's own misconduct. *See ComTran Grp., Inc. v. U.S. Dep't of Labor*, 722 F.3d 1304, 1317–18 (11th Cir. 2013). When a subordinate commits the violation, it follows traditional agency principles of imputation. *Quinlan v. Sec'y, U.S. Dep't of Labor*, 812 F.3d 832, 840–41 (11th Cir. 2016). In doing so, it has explained there is "little or no difference between the classic situation in which the supervisor sees the violation by the subordinate and disregards the safety rule . . . and [a] situation in which the supervisor sees the violation and pitches in and works beside the subordinate to expedite the job." *Id*. at 841. Despite the differing levels of involvement by the supervisor, both of those scenarios involve a subordinate's violation of safety rules so "it is reasonable to charge the employer with the supervisor's knowledge" of the subordinate's misconduct. *Yates,* 459 F.3d at 607 (citation omitted).

Angel Brothers' argument—that a supervisor's knowledge cannot be imputed to the employer when the supervisor authorizes, or takes some other active role in, a subordinate's safety violation—finds no support in *Yates*, in

agency principles, or in other caselaw.  Ordinary imputation principles thus apply.  Foreman Vidal's knowledge of the crew member's safety violation is attributable to Angel Brothers.

## B.

Angel Brothers' knowledge of the safety violation only establishes a *prima facie* case of unlawful conduct.  The company is not liable if it can show that the violation resulted from unpreventable employee misconduct.  To establish this affirmative defense, the employer has the burden to prove that it: "1) has established work rules designed to prevent the violation, 2) has adequately communicated these rules to its employees, 3) has taken steps to discover violations, and 4) has effectively enforced the rules when violations have been discovered."  *Yates*, 459 F.3d at 609 n.7.  The Commission found that Angel Brothers had work rules to prevent the excavation violation and took steps to discover those violations.  But it rejected the defense based on Angel Brothers' failure to prove the final requirement: that the company effectively enforces its safety rules upon discovering violations.

Even if a factfinder could reach a contrary view, substantial evidence supports the Commission's conclusion that Angel Brothers did not demonstrate effective enforcement.

First, after receiving this citation, Angel Brothers failed to discipline Fonseca for entering the unsafe trench.  One might respond that Angel Brothers is still challenging the citation, but recall that it has never disputed that Fonseca violated the OSHA regulation by working in an unsafe trench; it is only challenging whether the company should be penalized for that violation. And Fonseca also violated Angel Brothers' own safety rules, which require that an employee seeing an unsafe condition in a trench "REFUSE TO WORK" and report the condition "FOR IMMEDIATE CORRECTIVE ACTION."  Fonseca faced no consequence for ignoring this directive.

Second, although Angel Brothers is a large company that performs more than a thousand excavations annually, it has only documented two instances of disciplining employees for rules violations (including disciplining foreman Vidal for this instance). Both of these consequences only came after OSHA inspectors uncovered the violations. Angel Brothers could not identify any examples of discipline for safety violations it detected. What is more, in the five years preceding the ALJ hearing, five OSHA inspections had uncovered four trenching violations (including this instance), meaning at least two violations resulted in no discipline.

The dissent takes a different view of this twice-in-five-years disciplinary record, believing it shows that Angel Brothers "had a great overall record demonstrating effective enforcement." Dissenting Op. 2. That seemingly untenable position depends on a conclusion that the lack of discipline means the company had a perfect safety record other than the four times OSHA found violations. But the Commission did not have to accept the statistically implausible claim that although OSHA found violations during 80% of its five inspections, the company committed no safety violations the other 6,000 or so times it performed excavations. Probability aside, testimony from Angel Brothers supervisors rejects the idea that the company was so unlucky as to be violating safety rules only when OSHA was looking. Field safety manager Bennett said that he "frequently" finds "irregularities" when inspecting excavation worksites and on "rare" occasions those unsafe conditions exist when employees are in the trench. Indeed, Bennett discovered a spoil pile being too close to the excavation at Vidal's worksite the day before OSHA's inspection. But no one was disciplined for that. Even Angel Brother's Director of Safety does not maintain the company has a perfect safety record other than when OSHA visits. He said the company routinely disciplines and even terminates employees for safety violations. All this evidence is at odds with the notion

that Angel Brothers only violated safety rules four times among thousands of excavations.

For these reasons, the Commission was not compelled to find that Angel Brothers had a "nearly perfect" safety. Dissenting Op. 2. And on the ultimate question about the effectiveness of Angel Brothers' safety regime, our substantial-evidence review must account for this being an issue on which the company bears the burden. The issue thus is not whether substantial evidence supports the view that Angel Brothers "did not effectively enforce the rules," *id.*, the issue is whether the evidence required the agency to find that Angel Brothers did effectively enforce the rules. The Commission said this element of the affirmative defense was a "close question," and there was some disagreement among the Commissioners on the effect of certain evidence. But given the deference we owe agency factfinding, the Commission gets to make the close calls. Because the evidence does not compel a conclusion contrary to the one the Commission reached, we must defer to its ruling that Angel Brothers failed to establish the affirmative defense.

## C.

Angel Brothers also contests the Commission's finding that the violation was willful, rather than the less serious classifications of repeated, serious, or not serious. *See* 29 U.S.C. § 666(a)–(c). A willful violation is "an act done voluntarily, with either an intentional disregard of, or plain indifference to, OSHA requirements." *Georgia Elec. Co. v. Marshall*, 595 F.2d 309, 317 (5th Cir. 1979).

A supervisor's willful actions may be imputed to an employer in the same way knowledge of violations may be imputed. *Sec'y of Labor v. Tampa Shipyards, Inc.*, 15 BNA OSHC 1533, 1541 (No. 86-360, 1992); *see also Caterpillar Inc. v. Occupational Safety & Health Review Comm'n*, 122 F.3d 437,

440 (7th Cir. 1997).  Our conclusion that the foreman's state of mind can be imputed to Angel Brothers thus resolves this final challenge.  Foreman Vidal cannot plead ignorance of the trench box requirement.  Just a day before the citation was issued, a company safety manager instructed Vidal to install a trench box to ensure the crew's safety.  It is hard to find better evidence of willfulness than that.

* * *

The petition for review is DENIED.

No. 20-60849

Edith H. Jones, *Circuit Judge*, dissenting:

With due respect to my colleagues, I disagree that Angel Bros. should bear a fine in this case for the supervisor's willful violation of the OSHA trenching rule. As the majority notes, the company is not liable if a violation resulted from unpreventable employee misconduct, and the majority agrees this employer has satisfied three of four criteria for this affirmative defense. *Yates*, 459 F.3d at 609 n.7. The disputed factor is whether the employer "has effectively enforced the rules when violations have been discovered." *Id.* The Commission admitted its decision on this factor was a close call. I would say it was close to a deranged call.

This court is required to accept factual findings of the Commission only when supported by "substantial evidence on the record considered as a whole . . . ." *Sanderson Farms*, 811 F.3d at 734 (quoting 29 U.S.C. § 660(a)). "Such consideration of the record 'as a whole' is required by 29 U.S.C. § 160(e)–(f)." *STP Nuclear Operating Co. v. Nat'l Lab. Rels. Bd.*, 975 F.3d 507, 513 (5th Cir. 2020). Furthermore, "the evidence 'must be substantial, not speculative.'" *Dish Network Corp. v. Nat'l Lab. Rels. Bd.*, 953 F.3d 370, 376 (5th Cir. 2020), as revised (Mar. 24, 2020) (quoting *Brown & Root, Inc. v. NLRB*, 333 F.3d 628, 639 (5th Cir. 2003)). "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951). The Commission's finding that Angel Bros. did not effectively enforce the rules fails to properly account for the considerable evidence in the record indicating Angel Bros.' history of exemplary compliance with safety regulations.

The alleged "substantial evidence" supporting the Commission's adverse finding consists of two points. First, the employer failed to discipline the employee in the trench, Fonseca, even though it issued a warning to his

supervisor Vidal as a result of the instant violation. But failing to discipline Fonseca is hardly evidence of a failure to enforce the rules. As Angel Bros.' representative testified, the company believed Fonseca felt bound on pain of retaliation to enter the trench when so ordered by his supervisor. Although the employer counseled its crews to speak out if they knew of safety violations, any reasonable person knows that doing so would be a rarity, especially when the violator is a direct supervisor. Imposing discipline on one hapless employee will hardly change human nature in the trenches; and showing mercy to the underling while issuing a warning to the actual violator hardly supports a finding that this employer did nothing.

Second, during a five-year period, when the company conducted between 6,000 and 7,000 excavations, it received only four citations for trenching violations. The Commission determined that Angel Bros. allegedly disciplined employees for only two of the four. Does this factoid suggest Angel Brothers was unwilling to effectively enforce trenching rules? Hypothetically, even if one of the numerous company field safety managers oversaw operations on only one occasion during each project, which is a serious underestimate, then the company's citation rate would be 0.067 percent. That looks like a great overall record demonstrating effective enforcement.[1] In deciding otherwise, the Commission disregarded vital

---

[1] The majority seems to misunderstand the point of our disagreement. The majority goes to some length to establish that Angel Bros. did in fact commit safety violations. But all agree that the record does not suggest that "the company committed no safety violations" other than the four times identified by OSHA, and that "[a]ll this evidence is at odds with the notion that Angel Brothers only violated safety rules four times among thousands of excavations." *See* Majority Op. at 9–10. The point I make is merely that the record overwhelmingly indicates that the company enforced the rules by employing appropriate disciplinary measures when such violations were detected, and also, perhaps primarily, *proactive* measures to prevent violations before or as soon as they occur. The majority opinion acknowledges some of this evidence as well, yet focuses instead on a number of infractions rather than how the company responded to potential violations or

aspects of the record, including (1) the company representative's testimony that they do in fact enforce safety rule violations against employees, and (2) that safety audit records for supervisor Vidal's worksites showed exemplary compliance.

Additionally, the Commission's opinion is inconsistent. On one hand, the Commission approvingly acknowledged the company's multiple inspections of worksites and frequent, more penetrating, safety audits, which are documented and signed by the respective foreman and inspector. On the other hand, it held against the company that it failed to produce documentary evidence of discipline for trenching rules violations. And it then made an adverse finding on the issue of effective enforcement due to a lack of "adequate documentation" of discipline. Yet only two pages earlier in its decision, the Commission found that no supporting "documentation" is required to prove either the company's actual safety rules or that the rules were effectively communicated to employees. Based on these irreconcilable conclusions, Angel Bros. does not need to document the safety rules or the conveyance of such rules to employees, but it does need to document all disciplinary encounters or else it is not effectively enforcing the rules. This makes little sense.

There is more than one way to "enforce" OSHA rules. A company can proactively inspect and prevent violations before they occur, which is

---

existing violations. The issue presented to this court, as the majority acknowledges, is whether substantial evidence supports the view that Angel Bros. *did not effectively enforce the rules*, not whether there were occasional safety infractions at all. *See id.* at 10. In other words, this court's job is not to discern whether there were various infractions within the 6,000–7,000 excavations (there undoubtedly were some), but to discern whether Angel Bros.' *overall* enforcement of the rules was effective. Overall effectiveness does not require zero infractions. The existence of evidence of some infractions in the record does not overcome the substantial evidence of compliance also contained in the record.

exactly what Angel Bros.' history demonstrates. Or it can react by exerting formal discipline after technical violations are observed. Positive safety management versus negative safety hammering are merely two different approaches. The record aptly indicates that Angel Bros. utilized positive safety management with nearly perfect success. There is no "substantial evidence" to support that Angel Bros. did not effectively enforce the rules. Further, it is absurd to penalize the company for a proactive safety policy, yet that is the result of the Commission's rejection of this affirmative defense. The deference that agencies are owed for findings of fact has important limits. *Carey Salt Co. v. N.L.R.B.*, 736 F.3d 405, 410 (5th Cir. 2013). And "[a] flawed reading of the record provides no substantial evidence for a finding." *Dish Network Corp.*, 953 F.3d at 376 (internal quotations omitted). Where, as here, an agency's finding belies significant aspects of the record, it is not supported by substantial evidence. *See STP Nuclear Operating Co.*, 975 F.3d at 515 –17, 520.

For the foregoing reasons, I would grant the petition for review.