# United States Court of Appeals
# for the Fifth Circuit

—————————

United States Court of Appeals
Fifth Circuit

**FILED**
April 15, 2024

Lyle W. Cayce
Clerk

No. 22-60610

—————————

J.D. Abrams, L.P.,

*Petitioner*,

*versus*

Occupational Safety and Health Review Commission;
Julie A. Su, *Acting Secretary, U.S. Department of Labor*,

*Respondents*.

———————————————————————

Petition from the Decision of the
Occupational Safety & Health Review Commission
OSHRC Docket No. 20-0452

———————————————————————

Before Jones, Barksdale, and Elrod, *Circuit Judges*.

Per Curiam:[*]

J.D. Abrams, L.P. (Abrams), contests an administrative law judge's (ALJ) affirming two citations by the Occupational Safety and Health Administration (OSHA) for worksite violations involving excavation of a trench: cave-in protection; and ladder-length standards. *See* 29 C.F.R. §§ 1926.652(a)(1), 1926.1053(b)(1). In doing so, the ALJ concluded, *inter*

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

*alia*, that Abrams failed to establish its unpreventable-employee-misconduct (UEM) affirmative defense. *See J.D. Abrams, LP*, 2022 WL 7517239, at \*14–16 (No. 20-0452, 2022) (ALJ). In response, Abrams petitioned the Occupational Safety and Health Review Commission (Commission), which declined to review the ALJ's decision, resulting in its finality. The petition for review is **DENIED**.

## I.

Abrams, a construction company operating in Texas, has approximately 500 employees. In November 2019, an Abrams trench-excavation crew, led by Rivera (an installation supervisor), began pipe/waterline installation near Austin. On 2 December 2019, a trench box—metal reinforcement for a trench's walls—crushed a water pipe in the trench, causing it to explode. The next day, Rivera's crew performed excavation work for the trench at issue here. Because of the water-pipe incident the day before, Rivera deliberately did not use a trench box required for trenches deeper than five feet or when the excavation is not "made entirely [of] stable rock". 29 C.F.R. § 1926.652(a)(1).

Later that day, two OSHA Compliance Safety and Health Officers (CSHOs) inspected the worksite. They measured the trench's depth at three points; each measurement was greater than the five-feet maximum: respectively, five feet, eight inches; six feet; and six feet, seven inches. Additionally, the ladder used in the trench extended two feet, eight inches above the landing surface, shorter than the required three feet. *See* 29 C.F.R. § 1926.1053(b)(1) (requiring ladder to extend three feet above landing surface). Abrams' (Rivera's) crew had worked in this trench from between 7:00 and 8:00 a.m. until the CSHOs arrived around 1:00 p.m.

OSHA issued Abrams two citations for serious violations: failing to use cave-in protection, in violation of 29 C.F.R. § 1926.652(a)(1), meriting

serious classification because a resulting accident could cause an employee's "being crushed from a cave-in"; and using a ladder not extending at least three feet above the trench's edge, in violation of 29 C.F.R. § 1926.1053(b)(1), meriting serious classification because employees were exposed "to the hazard of falling from height". *J.D. Abrams*, 2022 WL 7517239, at *6, *10; 29 U.S.C. § 666(k) (explaining serious violation).

Abrams contested the citations by asserting, *inter alia*, the above-referenced UEM affirmative defense. Following a one-day hearing in December 2021, at which three witnesses testified (one of the two above-referenced CSHOs, Abrams' vice president of operations, and Rivera) and 29 exhibits were introduced, the ALJ in August 2022 affirmed the citations and assessed penalties of $7,711 for lack of cave-in protection and $5,783 for inadequate ladder height. Abrams petitioned the Commission for discretionary review, which declined to review the decision, resulting in its finality. *See* 29 U.S.C. § 661(j) ("The report of the [ALJ] shall become the final order of the Commission . . . , unless . . . any Commission member has directed that such report shall be reviewed by the Commission."); 29 C.F.R. § 2200.90(f) ("If no Commissioner directs review of a report . . . , the decision of the Judge shall become a final order of the Commission.").

II.

Regarding the below four elements of its UEM affirmative defense, Abrams primarily challenges the ALJ's finding that, although it satisfied the first two, it failed to do so for the last two. As provided in *Angel Bros. Enterprises v. Walsh*:

> To establish [the UEM] affirmative defense, the employer has the burden to prove that it: 1) has established work rules designed to prevent the violation, 2) has adequately communicated these rules to its employees, 3) has taken steps

     to discover violations, and 4) has effectively enforced the rules
when violations have been discovered.

18 F.4th 827, 832 (5th Cir. 2021) (citation omitted).  Obviously, all four elements must be satisfied.

     Abrams also maintains the ALJ's analysis: ignores Congress' intent for the Occupational Safety and Health (OSH) Act; destroys the UEM defense; and violates the Administrative Procedure Act (APA).  *See* 29 U.S.C. §§ 654 (explaining "Duties of employers and employees" under OSH Act), 651(b) (outlining Congress' "declaration of purpose and policy" for OSH Act); 5 U.S.C. § 556(d) ("[Under the APA,] [a] sanction may not be imposed . . . except on consideration of the whole record . . . and supported by and in accordance with the reliable, probative, and substantial evidence".).  Finally, Abrams contests the violations' being classified as serious and the imposed fines.

     All of Abrams' contentions, except regarding the fines, are reviewed under the same standard.  Because the Commission declined to review the decision (resulting in its finality), the ALJ's factual findings are accepted "if they are supported by substantial evidence on the record considered as a whole, and if a reasonable person could have found what the [ALJ] found, even if the appellate court might have reached a different conclusion".  *TNT Crane & Rigging, Inc. v. OSHRC*, 74 F.4th 347, 353 (5th Cir. 2023) (citation omitted).  In other words, if "the evidence does not *compel* a conclusion contrary to the one the Commission [or ALJ if the Commission declined review] reached, we must defer to its ruling that [Abrams] failed to establish the affirmative defense".  *Angel Bros.*, 18 F.4th at 833 (emphasis added).  Conclusions of law are upheld unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law".  *TNT Crane & Rigging, Inc.*, 74 F.4th at 353 (quoting 5 U.S.C. § 706(2)(A)).

No. 22-60610

Our review is largely controlled by our court's above-cited decision in *Angel Bros.*, which involved one of the same infractions: lack of cave-in protection. 18 F.4th at 829. There, "[t]he central issue [was] whether a supervisor's involvement in a subordinate employee's violation of workplace safety rules renders the employer liable". *Id.* Our court held: "imputing the supervisor's knowledge . . . to the employer [was] appropriate". *Id.*

In *Angel Bros.*, our court also addressed the fourth element of the UEM defense (effective enforcement) and deferred to the Commission's rejecting that defense because "substantial evidence support[ed]" the conclusion. *Id.* at 832–33. Our court stated: "Angel Brothers is a large company that performs more than a thousand excavations annually" but had only "two [documented] instances of disciplining employees" that both "came after OSHA inspectors uncovered the violations". *Id.* at 833. When addressing the contention that the company had a nearly perfect safety record, our court ruled: "the Commission did not have to accept the statistically implausible claim that although OSHA found violations during 80% of its five inspections, the company committed no safety violations the other 6,000 or so times it performed excavations". *Id.*

As noted earlier, our court ultimately held: "Because the evidence does not compel a conclusion contrary to the one the Commission reached, we must defer to its ruling that Angel Brothers failed to establish the affirmative defense". *Id.* Likewise, and for the following reasons, as well as essentially for the reasons provided in the ALJ's extremely detailed decision, we are not *compelled* to reach a conclusion contrary to the ALJ's.

A.

At issue regarding the UEM defense are whether Abrams has: "taken steps to discover violations, and . . . effectively enforced the rules when

5

violations have been discovered". *Id.* at 832. First addressed is element four: effective enforcement.

1.

The ALJ concluded Abrams failed to show it did so for its safety rules because Abrams "provided no evidence of any discipline or enforcement action that had been implemented as a result of its discovery of violations at a worksite", and the two examples provided were post-inspection related discipline. *J.D. Abrams*, 2022 WL 7517239, at *16; *see also Angel Bros.*, 18 F.4th at 833.

In reaching that conclusion, the ALJ rejected Abrams' attempt to introduce, in a post-hearing brief, an exhibit outlining instances of pre-inspection discipline:

> This attempt to shoehorn information, outside the hearing, into the record is improper. Because it was not presented during the hearing, there was no opportunity for Secretary to object or for either party to present witness testimony to explain or support the documents. The documents attached as Exhibit A to [Abrams'] post-hearing brief are not a part of the record of this proceeding and accordingly, are not considered here.

*J.D. Abrams*, 2022 WL 7517239, at *16 n.21.

In an attempt to circumvent this ruling, Abrams faults the Secretary for introducing only Abrams' written responses to discovery requests, and not this requested exhibit. Abrams' contention ignores that it was its burden, not the Secretary's, to establish the UEM affirmative defense. *See Angel Bros.*, 18 F.4th at 832.

In the alternative, Abrams asserts this exhibit was incorporated in its above-referenced discovery responses that the Secretary did introduce. It,

however, fails to cite any precedent supporting this incorporated-by-reference contention. *See also* 29 C.F.R. §§ 2200.70(a) ("All exhibits offered in evidence by a party shall be marked for identification before or during the hearing."), 2200.71 (applying Federal Rules of Evidence to OSHA hearings); FED. R. EVID. 901 (requiring authentication).

In short, Abrams fails to show that the ALJ abused its "wide discretion to exclude irrelevant or otherwise inadmissible evidence". *UNF W., Inc. v. NLRB*, 844 F.3d 451, 463 (5th Cir. 2016); *see also Turner Commc'ns Corp. v. OSHRC*, 612 F.2d 941, 945–46 (5th Cir. 1980) (rejecting petitioner's contention that ALJ improperly excluded irrelevant evidence). Accordingly, Abrams fails to show evidence compelling "a conclusion contrary to the" ALJ's. *Angel Bros.*, 18 F.4th at 833.

2.

Because Abrams fails to succeed on the fourth element of the UEM defense, we need not reach the third: steps to discover violations. Nevertheless, in the alternative and regarding that third element, Abrams contests the ALJ's finding it "failed to prove that it effectively took steps to detect violations of safety rules at its worksites". *J.D. Abrams*, 2022 WL 7517239, at *14. Substantial evidence, however, supports the ALJ's finding that Abrams did not have "a meaningful program to detect and to discourage safety violations". *Id.* at *15; *see also TNT Crane & Rigging, Inc.*, 74 F.4th at 360.

First, although Abrams' vice president testified that worksite-safety audits were "documented, compiled, and presented monthly", "no documentation of any audit was provided". *J.D. Abrams*, 2022 WL 7517239, at *15. Second, the lack of response to the 2 December water-pipe incident (the day before the events for which the two challenged citations were issued) supported the inference that "safety coordinators did not consistently

respond to near misses". *Id.* Third, Abrams failed to proffer evidence from a safety coordinator to "describe the frequency of site visits, the process for discovering violations at a worksite, how information was communicated to the employees during a safety audit, or the steps to remedy any compliance issues at a worksite". *Id.*

Abrams asserts certain documents (employee-safety manual, new-hire video, trench plan, and training records) and its vice-president's testimony (that unannounced audits occurred and at what frequency) were sufficient, but there is no corroborating evidence these worksite audits occurred. *See P. Gioioso & Sons, Inc. v. OSHRC*, 115 F.3d 100, 109–10 (1st Cir. 1997) (rejecting employer's contention the ALJ "unnecessarily required repetitive documentary proof referable to the UEM defense" because "there is no reason why a factfinder must accept an employer's anecdotal evidence uncritically" and "the absence of any vestige of documentary proof was not only a relevant datum but a telling one"); *see also TNT Crane & Rigging, Inc.*, 74 F.4th at 360 n.7 ("The Commission has previously found monitoring insufficient where no evidence showed that the employer monitored employee compliance with the rules pertaining to the specific conduct at issue in the citation during site visits.").

3.

Taking a different tack, Abrams asserts the ALJ's decision: eviscerates the purpose of the OSH Act (29 U.S.C. §§ 654, 651(b)); and destroys the UEM defense. Regarding the Act's purpose, Abrams' assertion ignores § 654(a)'s requiring employers to: "furnish . . . a place of employment . . . free from recognized hazards"; and "comply with occupational safety and health standards". Additionally, to the extent Abrams is challenging employer knowledge by citing *W.G. Yates & Sons Construction Co. v. OSHRC*, 459 F.3d 604 (5th Cir. 2006), it is unavailing.

*See Angel Bros.*, 18 F.4th at 830–32 (rejecting contention "that a supervisor's knowledge cannot be imputed to the employer when the supervisor authorizes, or takes some other active role in, a subordinate's safety violation"). Finally, regarding the UEM defense, Abrams essentially contends: if it is not deserving of the protections provided by that defense, no company is. But, as discussed *supra*, the ALJ's findings regarding lack of monitoring and enforcement are supported by substantial evidence.

4.

Abrams also asserts the ALJ's decision violated § 556(d) of the APA. *See* 5 U.S.C. § 556(d) (requiring agency decisions be made "on consideration of the whole record . . . and supported by . . . substantial evidence"). This contention was not presented in Abrams' petition for discretionary review by the Commission. *See* 29 U.S.C. § 660(a) ("No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."). This is not the requisite extraordinary circumstance. In addition, this belated contention is inadequately briefed; therefore, it is forfeited. *See* Fed. R. App. P. 28(8)(A) ("[T]he argument . . . must contain: (A) [petitioner]'s contentions and the reasons for them, with citations to the authorities and parts of the record on which [petitioner] relies".).

B.

Substantial evidence also supports the ALJ's classifying the two violations as serious. "Under the [OSH] Act, violations of a safety regulation are considered 'serious' if 'there is a substantial probability that death or serious physical harm could result.'" *Excel Modular Scaffold & Leasing Co. v. OSHRC*, 943 F.3d 748, 757 (5th Cir. 2019) (quoting 29 U.S.C. § 666(k)). "A violation may be determined to be serious where, although the accident itself

is merely possible . . . there is a substantial probability of serious injury if it does occur." *Id.* (alteration in original) (citation omitted).

The ALJ's finding "a trench cave-in and a fall from a ladder can each result in serious injury", *J.D. Abrams*, 2022 WL 7517239, at \*17, is "amply supported by the record", *Excel Modular Scaffold & Leasing Co.*, 943 F.3d at 757. The ALJ classified the trench-wall violation as serious because a cave-in could cause "serious injuries, such as contusions, fractures, suffocation, and death". *J.D. Abrams*, 2022 WL 7517239, at \*17. Abrams points to the CSHO's admitting error in including death as a justification; Rivera agreed, however, that an employee in the trench could get crushed and die. *See, e.g.*, *DiGioia Bros. Excavating, Inc.*, 17 BNA OSHC 1181, 1184 (No. 92-3024, 1995) ("If a cave-in occurred in an 8-foot deep trench, it is clear that there is a substantial probability that the likely result would be death or serious physical harm.").

The ALJ's finding the ladder violation was a fall hazard that could result in "contusions, fractures, and concussions" is also supported by substantial evidence. *J.D. Abrams*, 2022 WL 7517239, at \*17; *see, e.g.*, *Sw. Bell Tel. Co. v. Chao*, No. 00-60814, 2001 WL 1485847, at \*8 (5th Cir. 15 Nov. 2001) (refusing to disturb "[t]he Commission's determination that a serious broken bone could result" from ladder violation because determination "was based on substantial evidence in the record as a whole").

## C.

The two challenged fines are reviewed for abuse-of-discretion. *See Dan J. Sheehan Co. v. OSHRC*, 520 F.2d 1036, 1041 (5th Cir. 1975) ("The court is empowered to review the appropriateness of the penalty using an 'abuse of discretion' standard."); *Sw. Bell Tel. Co.*, 2001 WL 1485847, at \*8 ("This and other courts of appeals have a long history of according great deference to the Commission's judgment as to the appropriate penalty when

. . . the Commission gives consideration to the statutory factors, and when the penalty amounts fall within the statutory mandate.").

When assessing violations, the ALJ is to give "due consideration to the appropriateness of the penalty with respect to the size of the business of the employer being charged, the gravity of the violation, the good faith of the employer, and the history of previous violations".  29 U.S.C. § 666(j).

The statutory maximum for each serious violation was $13,494.  29 C.F.R. § 1903.15(d)(3) (2020).  As stated, the two penalties are below that amount:  $7,711 and $5,783.

Abrams contends the ALJ erred by:  omitting any analysis of the CSHO's testimony; failing to appreciate the absence of any prior citation on its record; failing to consider the low possibility of serious injury; and not affording it an adjustment based on good faith because Abrams communicated its rules to its employees.

Regarding the lack of analysis of the CSHO's testimony, Abrams' bare assertion that the ALJ erred by omitting the analysis does not show abuse of discretion.  For the absence of prior citations, the ALJ noted:  "[t]he lack of penalty adjustment reflects this lack of inspection history".  *J.D. Abrams*, 2022 WL 7517239, at *17 n.24.  As discussed *supra*, the ALJ's concluding Abrams did not adequately monitor its worksites is supported by substantial evidence.  Likewise, Abrams fails to show abuse of discretion by the ALJ's rejecting a penalty adjustment based on Abrams' perfect-record contention.  Abrams' likelihood-of-serious-injury contention is also discussed *supra*.

Finally, regarding good faith, the ALJ rejected Abrams' contention for a reduction because the "safety policy was incomplete".  *Id.* at *18 (citing *Capform, Inc.*, 19 BNA OSHC 1374, 1378 (No. 99-0322, 2001)).  Abrams again fails to show abuse of discretion.  *See, e.g.*, *Gen. Motor Corp.*, 22 BNA OSHC 1019, 2007 WL 4350896, at *38 (Nos. 91-2834E & 91-2950, 2007)

No. 22-60610

(rejecting good-faith reduction when "managerial personnel knew of widespread noncompliance . . . and tolerated as well as encouraged such hazardous work practices").

## III.

For the foregoing reasons, the petition for review is **DENIED**.